Booth, Chief Justice:
On March 3, 1927, the following jurisdictional act was approved (44 Stat. 1812) :
“An Act Giving jurisdiction to tiie Court of Claims to hear and determine the claim of the Butler Lumber Company, Incorporated.
“Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That the Court of Claims of the United States be, and hereby is, given jurisdiction to hear and determine the claim of the Butler Lumber Company, Incorporated, Richmond, Virginia, for damages resulting from the furnishing of piling in the erection of a fueling station on Craney Island, in Norfolk Harbor, Virginia, which station was erected *282 under a contract dated May 21, 1921, between W. S. Rendle and the United States Shipping Board representing the United States of America.”
The plaintiff, a Virginia corporation, seeks a judgment under the foregoing statute, predicating its right upon the facts about which there is no serious disagreement. On May 21, 1921, the United States Shipping Board entered into a written contract with W. S. Rendle for the construction at Craney Island, near Norfolk, Virginia, of certain concrete foundations. The work exacted the use of a large number of timber piles of different dimensions, and to secure the same the prime contractor, Rendle, contracted with Albert C. Place, of Boston, Mass., to supply the needed material. Place, on May 25,1921, contracted in writing with the plaintiff to furnish the piling he had agreed with Rendle to furnish, the same to be cut and delivered in accord with Place’s contract with Rendle. The plaintiff proceeded promptly and diligently to perform its contract; piling was supplied as per contract; a considerable number were inspected, approved, and delivered by plaintiff at the site of the work. In addition to the piling inspected and delivered, the plaintiff had on hand in the James River in condition to raft to the site of the work the piling called for by its contract.
On August 29, 1921, the plaintiff, in response to a request, to the Government inspector to inspect the piling then on hand and undelivered, was informed by him that he had been ordered by the Government constructing engineer in charge of the contract work to make no further inspection of plaintiff’s piling. No further inspection of plaintiff’s piling was ever made, which resulted in a loss to the plaintiff of its entire value. The piling through lapse of time became water-logged, rotten, and therefore utterly valueless. The plaintiff endeavored to dispose of it while in good condition but was unable to do so. This suit is for the recovery of a judgment for $61,010.96, the contract value-of the piling.
The plaintiff’s contention is centered upon the course of dealing and treatment received by it from the prime con *283 tractor, Rendle; the subcontractor, Place; and the responsible officials of the Shipping Board. The defendant contests the plaintiff’s right, basing its defense upon an assertion that the special jurisdictional act serves only to afford the plaintiff a judicial forum in which the claim may be-prosecuted, without intent to confess liability; and inasmuch as an act of Congress afforded the plaintiff means of redress, for its loss, there being no privity of contract between the plaintiff and the Government, the claim fails under the-general, principles of law. United States v. Mille Lac Band of Indians, 229 U. S. 498; Stanton & Jones v. United States, 68 C. Cls. 379. The plaintiff, on the other hand, insists that the special jurisdictional act, construed in the light of the committee report reporting the same to Congress, was intended to and did confer upon this court juris-' diction of an action sounding in tort. We agree with the-defendant’s contentions in so far as they extend to the obvious intent of Congress to afford the plaintiff a judicial forum for the adjudication of its rights and the necessity of the plaintiff to establish its case in accord with existing legal principles, but we disagree as to the effectiveness of the defense predicated upon the theory of no privity of contract and a complete remedy at law under the act of 1905. Inasmuch as the act of February 24, 1905 (33 Stat. 811), becomes an extremely important factor in the decision of this, case, we quote the following pertinent provisions thereof:
“ That hereafter any person or persons entering into a-formal contract with the United States for the construction, of any public building, or the prosecution and completion of any public work, or for repairs upon any public building or public work, shall be required, before commencing-such work, to execute the usual penal bond, with good and sufficient sureties, with the additional obligation that such contractor or contractors shall promptly make payments to-all persons supplying him or them with labor and materials, in the prosecution of the work provided for in such contract; and any person, company, or corporation who has furnished labor or materials used in the construction or repair of any public building or public work, and payment for which has not been made, shall have the right to intervene and be made a party to any action instituted by the *284 United States on the bond of the contractor, and to have their rights and claims adjudicated in such action and judgment rendered thereon, subject, however, to the priority of the claim and judgment of the United States. If the full amount of the liability of the surety on said bond is insufficient to pay the full amount of said claims and demands, then, after paying the full amount due the United States, the remainder shall be distributed pro rata among said interveners. If no suit should be brought by the United States within six months from the completion and final settlement of said contract, then the person, or persons supplying the contractor with labor and materials shall, upon application therefor, and furnishing affidavit to the department under the direction of which said work has been prosecuted that labor or materials for the prosecution of such work has been supplied by him or them, and payment for which has not been made, be furnished with a certified copy of said contract and bond, upon which he or they shall have a right of action, and shall be, and are hereby, authorized to bring suit in the name of the United States in the circuit court of the United States in the district in which said contract was to be performed and executed, irrespective of the amount in controversy in such suit, and not elsewhere, for his or their use and benefit, against said contractor and his sureties, and to prosecute the same to final judgment and execution: Provided, That where suit is instituted by any of such creditors on the bond of the contractor it shall not be commenced until after the complete performance of said contract and final settlement thereof, and shall be commenced within one year after the performance and final settlement of said contract, and not later: * *
Undoubtedly there was no privity of contract between the plaintiff and the Government and if the case was dependent upon this fact the plaintiff’s petition would have to be dismissed. The plaintiff does not contend to the contrary. The determinative issue as we view it is not the relationship of the plaintiff and the defendant erected by contract provisions, but the relationship between the parties to this suit which came into being after and during the course of the performance of its contract with Place, the prime contractor’s subcontractor. The question then remains whether the special jurisdictional act was intended to confer jurisdiction upon this court to hear and adjudicate the rights of the parties growing out of and incident to the *285 plaintiff’s right of redress under the. act of 1905 {supra). In other words, did the act intend to invest this court with jurisdiction to hear and determine a case which might result in holding the Government liable for the negligent and wrongful acts of its agents — a jurisdiction which this or no court possesses except by special act? The power to enact such legislation is, of course, not challenged. If we resort to the act itself, unaided by the committee report, the defendant’s contention seems invulnerable. Considered, however, in the light of the committee report and the facts and circumstances of the cases, a vastly different aspect confronts the court. A case in point is found in Walton v. United States, 24 C. Cls. 312. In this case Congress referred by special act the claim of the owners of the steamer N. Bunion, her cargo, freight, tow, and personal effects alleged to have been sunk by collision with the pier of the Davis Island Dam, in the Ohio River.” The court was given authority to hear and determine the same to judgment. No other facts with reference to the event were recited in the act. The record disclosed, and the court found, as a fact, that the injury the plaintiff suffered was caused by the failure of the person in charge of the pier to obey the orders of the Government officers in charge of the work to place warning lights thereon. In awarding judgment for the plaintiff the court resorted to the report of the committee in charge of the bill, and among other things stated as follows (p. 376) :
“ The right of the claimants to a recovery in this proceeding depends upon the construction of the special statute— as to whether Congress intended to apply to the United States, as defendants, the same law of liability that attaches to ordinary corporations or individuals. If the Government is subjected to that law, the claimants are clearly entitled to recover, as the findings show that the loss of the property is £ attributable to the gross negligence of the officers and employes of the defendants.’ The statute provides that the Court of Claims £ shall hear and determine the same to judgment, with the right of appeal as in other cases.’
“ In the absence of express statutory provisions, it is well settled that the United States are not liable for the torts of its officers and agents, within the jurisdiction of the judicial department of the Government. It is for Congress to deal *286 with such questions of responsibility, the policy of the Government not having intrusted matters of that character by general law to the determination of its courts. * * *
“ In this view of the law it is safe to assume that the act giving this court jurisdiction was passed, so that within the-jurisdiction conferred by the statute the defendants became subject to the same responsibility that would attach to corporations or individuals amenable to common-law liabilities.”
In Carroll v. District of Columbia, 22 C. Cls. 104, a special jurisdictional act referring to this court the claim of the devisees of the late Daniel Carroll for adjudication, a claim emanating from excavations made by the District officials in changing the grade and regrading certain streets adjoining the property owned by the claimants, the court ascribed to-Congress an intent to afford relief to the claimants, irrespective of the District’s immunity from liability under the law for such improvements and the absence of any suggestion as-to negligence in the performance of the work upon the part of the District’s agents. Judge Weldon in delivering the opinion of the court determined the issue by asserting among-other things the following (p. 108) :
“ If the claimants are to be confronted by the legal proposition that a municipal corporation is not liable, unless m case of trespass or negligence, then the act ‘ for the relief of the devisees of Daniel Carroll ’ is a barren right, productive of no other result than the application of the law as it existed before the statute of 1884, which precluded the right to maintain a suit, both as to our jurisdiction and the right to recover upon the case stated in the petition, and developed by the findings.
“ In this view of the effect of the law conferring jurisdiction there arises but two questions for our determination: First, whether the parties contemplated by the law are claimants in this proceeding; and if so, how much damage (if any) have they suffered because of the improvement of the streets around block No. 736, as provided in the act? While each of these questions may be a mixed question of law and fact (the question of negligence being incident to the latter) we have found the ultimate fact as to both inquiries. The first finding shows that all the parties in interest are made parties in this case; so that this proceeding will operate as a bar for all future claim for damages under the act referring the matter to this court for adjudication. This fact was conceded by the defendant’s counsel.”
*287 On July 8,1886, Congress by special act conferred on this court jurisdiction to adjudicate the claim of named parties for the loss of property seized by a military commander in the prosecution of a military expedition occasioned by serious trouble in Utah. (23 C. Cls. 149.) The special act was .not free from ambiguity and its scope somewhat doubtful. In construing the same in favor of jurisdiction to adjudicate the controversy, the court said (pp. 156, 157) :
“ Having decided that we are to ‘ adjudicate ’ — that is, to find a judgment — ‘ according to law,’ we must turn again to the act for the purpose of discovering the precise question submitted to us. It is the claims of certain individuals for property alleged to have been ‘ taken and impressed into the ■service of the United States ’ at a time fixed, under an order specified, ‘ as well as for property alleged to have been sold to the Government.’ The last clause is simple of construction and clearly refers to the same transaction. In fact, there is no contention to the contrary. We are then presented with this question: Was plaintiffs’ property ‘taken and impressed into the service of the United States ? ’ ”
This case was before the Supreme Court on appeal (127 U. S. 125), and while it was reversed as to certain items for which judgment was given, the construction given the special ..act by this court was affirmed.
The early case of Boudinot v. United States, 18 C. Cls. 716, marks out the approved rule of statutory construction which the court has consistently followed in ascertaining legislative intent and giving scope to special jurisdictional acts. The special act in the Boudinot case in its preamble contained numerous “ Whereases,” by the terms of which the subject .matter of relief was recited in considerable detail. The court experienced no trouble in adjudicating the issues. Chief Justice Drake delivered the opinion of the court, saying with reference to the a<?t itself that (p. 728) —
“ It removes any ground for questioning the right of an Indian to sue in this court, and gives jurisdiction to this tribunal, which it would not otherwise have, of a claim against the Government based on an alleged tort committed by its officers.
“ It goes further, and declares an act done by the internal-revenue officers of the Government, which had been sustained "by the verdict of a jury and the decree of a United States *288 district court, affirmed by a solemn judgment of tlie Supreme Court of the United States on a grave constitutional question, to have been £ a wrong done ’ to the claimant.
“And it goes still further, and authorizes the claimant ‘ to recover what may be due him in justice and, eguity for the loss inflicted upon him5 by the seizure of his property, though the perfect legality of the seizure was sustained by the judiciary appointed under the Constitution and laws to decide the matter of controversy involved in that proceeding.”
To the same effect and in accord with the precise rules adopted in preceding cases the court in Dahlgren v. United States, 16 C. Cls. 30 awarded a judgment under a special act to an inventor, one who had conceived and perfected his. invention while in the service of the United States as an officer in the Navy. The Government contended in defense of the suit that it was not foreclosed from a defense, admittedly conclusive, that one in the Government service may not sue the Government for the use of an invention conceived, perfected, and experimented with at the expense of the Government while the inventor was employed in said service. The court in its opinion disposed of this contention in the following manner (p. 50) :
“ If we accept this construction of the act, the claimant’s case comes to an end almost as soon as it begins. Lieutenant Dahlgren was an officer in the Navy, on duty at Washington as an ordnance officer when these experiments began. They were conducted by him in the line of his duty, at the public expense, under the constant supervision of his superior, to. whom he reported every step, and with a view to improvements in the ordnance for the Navy. While they were going-on his pay was increased by special act of Congress beyond that of other officers of his rank on duty on like shore service. Their results were reported to Congress by the 'Secretary of the Navy. Special appropriations were made for conducting them on a larger scale at sea. All these facts were,, through statutes of the United States, through reports of the Secretary of the Navy, and through other documentary proof, known to Congress when it passed this act. They are^ if not waived, a complete defense here.
“ If Congress had intended to set this defense up, it is. more reasonable to suppose that it would have done so itself rather than put the claimant to the cost of a suit in order to have it set up here.”
*289 Additional precedents are available. The ones cited we tbinlr firmly establish the rule that a special jurisdictional act may waive a special and conclusive defense to a claim, and that the court is from the terms of the act, and the reports of committees of Congress in enacting the same, together with all the facts and circumstances attending the transaction, to ascertain whether the act was intended so to do, and give it effect accordingly. In so holding we do not encounter an adverse ruling in the cases of Mille Lac Indians v. United States, and Stanton & Jones v. United States (supra). The act involved herein does not in our opinion waive all defenses available under the law and leave the court with the single duty of ascertaining the amount of damages suffered by the plaintiff. It does waive a special defense predicated upon a lack of privity of contract between the plaintiff and the defendant, as we construe the intent thereof. Nevertheless the plaintiff is not relieved from the burden of establishing a liability upon the part of the Government that would attach “ to a corporation or an individual employer at common law,” as said in the Walton case (supra). If the record fails in this respect the court is warranted in dismissing the petition.
The contract between Rendle and the Shipping Board provided for the construction of twenty pile and concrete foundations for 55,000-barrel steel oil tanks on Craney Island, Norfolk Harbor. The contractor was to furnish a bond in the sum of $75,000 and no subcontracts were to be entered into by the contractor without the consent of the board’s consulting engineer in charge of the work. The foundations were to be constructed by sinking piles and the contract specified the price to be paid for the various dimensions to be used. The specifications provided for Government inspection of piling and an inspector was appointed and did inspect the same at the site where plaintiff produced the same. This inspector, appointed by and acting for the Shipping Board, was in close contact with plaintiff and its employees. On August 29, 1921, in response to requests from plaintiff for the inspection of piles then in condition to raft to the site of the work, the inspector for *290 the first time informed the plaintiff that instructions from the constructing engineer forbade him from making further inspections until thereafter notified. No further inspections were ever thereafter made, and the entire lot of piling uh-inspected was a total loss to plaintiff. The record clearly reveals that the plaintiff performed its contractual obligations in every respect. It further reveals that the prime contractor’s contract, Place’s subcontract, and the contract of the plaintiff were precisely in accord with each other as to dimensions of piling, essential for completion of the work, and that at no time prior to actual operations at the site of the work had any of the parties to the contracts contemplated or expected the use of shorter piling than that specified in the prime and Place’s contracts. Whatever may have been the cause for the discontinuance of the inspection of plaintiff’s piling, no charge has been lodged against it that it failed in any particular to perform its contract to the letter of the same. Under all these facts the plaintiff was lawfully entitled to proceed under the act of February 24, 1905 (33 Stat. 811), in the name of the United States for its use and benefit “ against said contractor and his sureties, and to prosecute the same to final judgment and execution.” The f oregoing statute entitled “An act to amend an act approved August thirteenth, eighteen hundred and ninety-four, entitled £An Act for the protection' of persons furnishing materials and labor for the construction of public works’,” provides that if no suit is brought by the United States within six months from the completion and final settlement of a Government contract “ the person of persons supplying the contractor with labor and materials shall, upon application therefor, and furnishing affidavit to the department * * * be furnished with a certified copy of said ■contract and bond, upon which he or they shall have a right of action.” (Italics ours.) The beneficent scope of the act is apparent from its terms; its scope and intent are in nowise obscure, and that the plaintiff was entitled to the redress therein provided is not disputed.
Twice in October, 1921, the plaintiff brought to the attention of the Shipping Board that the Government contractor was indebted to it in a large sum. The Shipping *291 Board, with' scant attention, referred the claim to the constructing engineer in charge of the contract and thereafter informed the plaintiff that the board had no relations with the plaintiff and therefore the plaintiff was not entitled to any information from the board with respect to the contract or its claim. The plaintiff persisted in its demands before the board and finally obtained from the United States district attorney on August 3, 1922, the information which the Shipping Board was legally obligated to furnish, that the prime contractor had completed the performance of his contract on February 25, 1922, and been settled with in full on February 28, 1922. On the 27th of July following the plaintiff filed its affidavit with the board as the act of 1905 required, and on this date demanded a certified copy of the prime contract and the bond the prime contractor under the act of 1905 was required to give. The board not only illegally declined to comply with plaintiff’s request; its officials did a great deal more. Either through ignorance or intent the plaintiff — and this fact is not contradicted — was informed that no contract existed as between the board and the prime contractor, Bendle; that no bond had been given by Bendle; but that the contract was between Bendle and the Emergency Fleet Corporation; that the statutes at large did not apply to the Emergency Fleet Corporation, and refused to give the plaintiff any information on the ground that there was no privity of contract between the plaintiff and the Fleet Corporation. It was not until February 1, 1925, that the plaintiff learned for the first time that the information which had lulled it into a presentation of its claim to the board and not the courts, was not in accord with the facts of the case, and that it had by reason of such statements lost its right to proceed under the act of 1905. Strange as it may seem, the Shipping Board disallowed the plaintiff’s claim on the ground of the lack of privity of contract between the board and plaintiff. While of course the board was without jurisdiction to allow the plaintiff’s claim, its belated conception of plaintiff’s rights was so totally foreign to what should have been done when plaintiff’s affidavit was filed and demand made for copy of contract and bond, at a time when plaintiff’s rights under the *292 law accrued, that something should have been said either then or in the record now before us as to the reasons for denying the plaintiff its rights under the statute. No doubt the plaintiff might have resorted to legal process to secure a certified copy of the bond and contract. This much, at any rate, it would doubtless have had to do to sue under the act of 1905. In our view, however, the board under the act of 1905 was not only charged with protecting the rights of the United States under the contract, but was charged with the express duty of aiding and protecting the interests of creditors of the contractor to the extent of the bonded liability of his sureties by way of supplying them with the information essential under the law. Lack of privity of contract between the board and the plaintiff was not an available defense of the contractor or bonding company under the statute of 1905. Its terms are remedial and comprehensive, and the Congress of the United States did not intend that Government contractors should receive the full consideration for their contracts and leave unpaid those who had supplied materials or furnished labor. In this very case the board accepted one affidavit that all outstanding claims had been paid by the contractor, and upon the strength of the same settled with him in full when at the same time officials of the board knew that the plaintiff had not been paid, and by inquiry could have easily ascertained the fact. Surely a citizen of the country is entitled to departmental information which the law provides he shall have, and to rely upon the accuracy and truthfulness of information he does receive. If a private corporation had by its conduct precluded the resort to a legal remedy, such as the record in this case discloses, its liability for its acts in that regard is apparent. The special jurisdictional act in this case was intended to refer an action ex delicto. If it did not, the report of the committee in charge of the act clearly discloses that Congress was enacting legislation to no effect whatever.
We think the plaintiff has established its case, and judgment will be awarded the plaintiff in accord with the findings for $61,070.96. It is so ordered.
Whalet, Judge; Williams, Judge; LittletoN, Judge; and GeeeN, Judge, concur.
*293 OPINION OP THE COURT DELIVERED JUNE 1, 1931
Booth, Ghief Justice:
This case is now before the court upon defendant’s motion to amend the findings of the court and for a new trial. The sought-for amendments to the findings and the argument advanced for a new trial are directed to the findings and opinion of the court awarding judgment in favor of the plaintiff, announced December 1, 1930. By an act approved March 3, 1927, Congress conferred upon the court “ jurisdiction to hear and determine the claim of the Butler Lumber Company, Incorporated,' Richmond, Virginia, for damages resulting from the furnishing of piling in the ■erection of a fueling station on Craney Island, in Norfolk Harbor, Virginia, which station was erected under a contract dated May 21, 1921, between W. S. Rendle and the United States Shipping Board representing the United States of America.” The court in construing this special jurisdictional act resorted in part to the report of the Judiciary Committee of the House of Representatives, before whom the act was considered and by whom the report was made, to ascertain its intent and scope. We held — and apparently the defendant does not now at least challenge the correctness of our opinion — that the act was intended to and did confer upon this court jurisdiction to determine an action sounding in tort.
Upon the merits of the case we found that, due to the carelessness, negligence, and actual misrepresentations of the defendant’s officers, the plaintiff had been deprived of a right of action for the recovery of such damages as it had sustained, a right expressly granted to the plaintiff by the terms of the act of February 24, 1905 (33 Stat. 811). The findings of the court disclosed that the officials of the Shipping Board had not only refused to give to the plaintiff a copy of the prime contractor’s contract and bond, after repeated requests therefor, but that they had actually told the plaintiff’s representatives that no such contract or bond was in existence, and that in virtue of said refusal and due to said misinformation the plaintiff was unable to ascertain the essential information upon which a suit might be predicated against the prime contractor’s bond for the recovery *294 of materials supplied the prime contractor until long after the lapse of the limitation period provided in the act for so doing. The act of 1905, which we quoted in full in the-opinion of the court and to which we think it is only necessary to refer briefly in this supplementary opinion, is a comprehensive remedial statute intended to protect all persons-who supply a Government contractor with labor Or materials from the loss of pay therefor. The act requires that previous to entering into any contract for the construction of any public building or any public works the contractor shall enter into a bond with good and sufficient sureties, that said contractor, be it a person, corporation, or company,, “shall promptly make payments to all persons supplying him or them with labor and materials in the prosecution of* the work provided for in such contract.” It further provides that the injured party may have the right to intervene in any proceedings commenced by the United States against-the bond of a contractor, and in the absence of any such suit within six months from the completion of the contract by the United States the injured party is given one year after the performance and final settlement of the contract to' institute in the United States district court in the name of the United States a suit against the contractor’s bond for-the payment for such labor and materials supplied the contractor. In order to enable this plaintiff or any other similarly situated to sue and recover pay for materials furnished a Government contractor. the statute required the-proper officials of the department having charge of the contract work, upon affidavit filed setting forth the furnishing-of labor and materials and nonpayment therefor, to furnish said person with a certified copy of said bond and contract-, upon which said suit was predicated.
We found, as previously stated, that the officials of the' department having charge of this contract work carelessly,., negligently, and through misrepresentations that no such bond or contract existed between the prime contractor and the Shipping Board, as well as a positive and express refusal to supply the plaintiff with existing copies thereof,, had deprived the plaintiff of his right of action under the-statute and that knowledge of the existence of the contract: *295 and bond reached this plaintiff on a date too late to proceed under the act.
The defendant in its motion for new trial presents an entirely new and somewhat novel defense not heretofore called to the attention of the court or relied upon when the case was tried. The defendant’s present contention is that there were no stipulations or provisions in either the written contract or the bond exacted thereunder which in any way obligated the contractor or his sureties to pay for the labor and materials supplied the contractor, and hence had the officials of the Shipping Board complied with the act of 1905.in this respect the plaintiff could not under cited cases have recovered upon the prime contractor’s bond in a suit as authorized by the act. Again it is asserted in the argument of the defendant that “ on the facts found the breach of duty by defendant’s agents did not occasion plaintiff’s damages.” To sustain the contention the following cases are cited: United States v. Starr et al., 20 Fed. (2d) 803; United States, to use of Zambetti v. American Fence Construction Co., 15 Fed. (2d) 450; United States v. Stewart, 288 Fed. 187; Babcock & Wilcox v. American Surety Co., 236 Fed. 340. The determinative principle announced in the above cases is that where the bond of the contractor does not contain an obligation to pay claims for labor and material supplied the contractor, laborers and material men may not hold the surety responsible therefor. In other words, where the bond of the contractor does not obligate the surety to answer for the default of the contractor in failing to pay the wages of laborers and the cost of materials supplied him the surety is not liable. Without conceding the conclusive effect of such a defense as is now urged for the first time, we think the contention is devoid of merit #for other most compelling reasons. It is true we held, as a result of the oral argument and briefs of the parties when the case was first submitted, that the failure to furnish the plaintiff a certified copy of the prime contractor’s contract and bond, and misrepresentations as to their existence, precluded the plaintiff from resorting to its established remedy under the act of 1905. We so held because they were the only tortious acts of the defendant’s officials cited or re *296 lied upon. Both sides to the controversy argued, briefed,, and submitted the case wholly upon this theory, without suggesting that’ the bond and contract contained insufficient terms to impose the obligations essential for a recovery under the act of 1905. The special jurisdictional act empowers the court to “ hear and determine the claim of the Butler Lumber Company * * * for damages resulting from the furnishing of piling * * * under a contract * * * between W. S. Bendle and the United States Shipping Board representing the United States of America.” The court has construed the act as one conferring upon the court jurisdiction of an action sounding in tort, and while we found the tortious acts to consist of the conduct set forth in the findings then announced, we did so because they were the only tortious acts brought to-our attention. Had we known then as we know now — the defendant having called the same to our attention — that additional tortious acts had been committed by the defendant’s officials, tortious conduct which absolutely precluded the plaintiff — relying upon defendant’s present argument — from resorting to the remedy provided in the act of 1905, we would have then found, as we do now so find, and included them as additional reasons for awarding the plaintiff judgment. There is nothing in the report of the judiciary committee or the special jurisdictional act that limits our jurisdiction to award judgment upon the basis of the facts stated in the report. This report served only to enable us to ascertain the legislative intent in enacting the statute. Evidence of considerable volume was taken before a commissioner of this court, exhibits and oral testimony erected a record from which we deduced our findings, and this record makes up the case upon which we predicated our judgment, not the report of the judiciary committee. What, then,' does this record now disclose? The answer is so obvious as to hardly need discussion. It discloses that through the negligent and careless conduct of the defendant’s officials, who prepared the written contract in this case — the contract of the prime contractor Bendle — the bond given by him did not comply with a mandatory provision of the act. *297 of 1905, which by its express terms required them to see to it that both the contract and the bond contained express provisions obligating each of the said parties for the payment of the wages of laborers and the cost of materials furnished the contractor by any person or persons in the prosecution of his contract work. The act of 1905 in this respect reads as follows:
“ That hereafter any person or persons entering into a formal contract with the United States for the construction of any public building, or the prosecution and completion of any public work, or for repairs upon any public building or public work, shall be required, before commencing such work, to execute the usual penal bond, with good and sufficient sureties, with the additional obligation that such contractor or contractors shall promptly make payments to all persons supplying him or them with labor and materials in the prosecution of the work provided for in such contract; * *
Therefore, the first wrongful act, the negligent and careless inattention to a duty cast upon the officials of the defendant by express terms of law, precluded — if the defendant’s present contention is sound — the plaintiff from resorting to an established remedy in the Federal courts, a wrong for which the United States by the special jurisdictional act assumes liability when established according to law, an act of careless omission to perform a duty which did effectually cause this plaintiff damages. The contract and bond of the contractor Bendle did not contain an express obligation to pay the wages of laborers or the cost of material supplied the contractor by any person or persons, and the reason for the absence of the provisions is assignable to the conduct of the defendant’s officials in carelessly and negligently failing to observe the law. We said in the original opinion, “ If a private corporation had by its conduct precluded the resort to a legal remedy, such as the record in this case discloses, its liability for its acts in that regard is apparent.” The special jurisdictional act and the record in this case confer upon us no jurisdiction to decide a controversy between the plaintiff and the contractor’s sureties as to the latter’s liability under the act of 1905. The *298 scope and intent of our jurisdiction are restricted to a determination as to whether the wrongful acts of the defendant’s officials deprived this plaintiff of the right and remedy accorded him by the Government by the terms of the act of 1905, and the record before us indisputably establishes the fact that had the defendant’s officers observed the law this plaintiff would not have had to resort to Congress as it did to recover for materials supplied the contractor and receive its pay therefor from the Treasury of the United States instead of from the contractor or its sureties, to whom the defendant’s officials wrongfully paid monies due this plaintiff. It is indeed difficult to perceive the merits of a defense which admits the tortious acts of the defendant, at the same time contending that notwithstanding a series of wrongs which deprived this plaintiff of an established remedy the United States is not liable because the plaintiff could not recover under the act of 1905, the tortious acts of the defendant preventing him from so doing. The above-stated situation is the precise one for which the special jurisdictional act was intended to and did afford the plaintiff a remedy in this court.
The prime contractor’s contract in this case contained the following provisions as to the contractor’s responsibilities, viz:
“ The contractor shall not sublet any of the work to be performed under this agreement without the consent of the board’s consulting engineer for fuel-oil stations. If any work is sublet, the contractor shall be responsible for the work done or acts committed by the subcontractor. * * *
“ The work done and materials furnished shall be satisfactory in every way to the board’s consulting engineer for fuel-oil stations, who may inspect _ the work at any time. * * *
“ The contractor agrees to furnish a bond in the penal sum of seventy-five thousand ($75,000) dollars, conditioned upon his performing his obligations under this contract. * * *
“ If said principal shall well and truly perform all his obligations under the said agreement, then this bond shall be null and void, but otherwise shall remain in full force and effect * * *
*299 The plaintiff insists that inasmuch as the contract provisions quoted limited the contractor’s right to sublet any part of the contract work except by the consent of the board’s consulting engineer, and in addition held the contractor responsible for all the work done or acts committed by a subcontractor, these stipulations in the contract constituted obligations upon the part of the contractor to pay the subcontractor for work or materials involved in the latter’s subcontract. The contractor’s bond being conditioned upon his performing his obligations under the contract rendered the sureties liable under the act of 1905. The Supreme Court has uniformly given to the remedial act of 1905 a broad and liberal interpretation (Hill v. American Surety Co., 200 U. S. 197; Brogan v. National Surety Co., 246 U. S. 257), and we are not prepared to say — in any event we are not required to express an opinion — that the plaintiff’s contention is without merit. The plaintiff, in our opinion, was, by the wrongful acts of the defendant, denied its day in court to present the above or any other contention in the assertion of its rights, and the defendant may not justify the wrongs committed by an attempt to forecast the result of such litigation and foretell what the decision of the court might be. In our opinion, the defendant’s wrongful acts had their inception in the initial proceedings of this controversy and continued throughout it. The plaintiff’s rights were utterly disregarded in the face of lawful duties, and in disregard of existing facts, when it was the defendant’s lawful duty to do otherwise. Congress has legislated to afford the plaintiff a forum to assert the rights it has been deprived of, and, in our opinion, the plaintiff has established its case and is entitled to a judgment. The motion to amend the findings will be allowed in part and overruled in part, the former -findings withdrawn and judgment set aside, amended findings this day filed, and judgment awarded plaintiff for $61,070.96, in accord with the opinion of the court announced December 1, 1930, which is to stand, and the opinion this day announced. It is so ordered.
Whalet, Judge; Williams, Judge; Littleton, Judge; and Green, Judge, concur.
*300 OPINION OP THE COURT DELIVERED DECEMBER 7, 1931
Booth, Chief Justice:
This case is now before the court for the third time. It was originally argued and submitted on October 20, 1930, the court deciding in favor of the plaintiff and entering judgment in its favor on December 1, 1930. The opinion then rendered, which we make a part of this record by reference, was rested upon the failure of the officials of the Government, upon whom legal responsibility was imposed, to supply the plaintiff with essential information and evidence which would enable it to proceed against the sureties of the prime contractor for materials furnished and supplied him in the performance of his contract with the Government, a right accruing to the plaintiff under the provisions of the act of February 24, 1905 (33 Stat. 811), jurisdiction to hear and adjudicate the controversy being conferred upon the court by an act approved March 3, 1921, which reads as follows:
“ [Private — No. 468 — 69th Congress]
“ [H. R. 17108]
“An Act Giving jurisdiction to the Court of Claims to hear and determine the claim of the Butler Lumber Company, Incorporated.
“Z?e it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That the Court of Claims of the United States be, and hereby is, given jurisdiction to hear and determine the claim of the Butler Lumber Company, Incorporated, Bichmond, Virginia, for damages resulting from the furnishing of piling in the erection of a fueling station on Craney Island, in Norfolk Harbor, Virginia, which station was erected under a contract dated May 21, 1921, between W. S. Bendle and the United States Shipping Board representing the United States of America.
“Approved, March 3, 1927.” •
The Government’s first defense embodied an insistence that the jurisdictional act did not confess liability but only afforded a judicial forum where the plaintiff’s claim should be adjudicated according to law, and that inasmuch as no privity of contract existed as between the United States. *301 and this plaintiff — who was a subcontractor of a subcontractor of the prime contractor — under general principles of law plaintiff could not recover. It was, of course, not asserted that plaintiff could not have recovered under the act of 1905 against the prime contractor’s sureties. The court reached a conclusion that the special jurisdictional act conferred upon the court jurisdiction of an action sounding in tort. In so doing, recourse was had to the report of the committee of Congress under whose jurisdiction it was considered and reported to Congress with a favorable recommendation for its enactment.
On January 30, 1931, the defendant in a motion for a new trial under the rules, vigorously challenged the soundness of our opinion, and brought forward a state of facts— theretofore unknown and not presented to the court, but which should have been known to and presented by the' defendant — from which it appeared that the Government officials upon whom devolved the duty of exacting a bond from the Government’s contractors in accord with the provisions of the act of February 24, 1905 {supra), had carelessly and negligently failed to perform that duty, and thereby deprived the plaintiff of its cause of action especially provided for in the foregoing act.
From the above facts the defendant adduced an argument that even if the Government officials had given it the information, or notwithstanding they refused to do so, the plaintiff suffered no damages and could not have recovered' on the bond because no such instrument was in existence, and “ the breach of duty by the defendant did not occasion plaintiff’s damages.”
The court amended the findings in accord with the facts,, and in a second written opinion adhered to its former judgment. (See opinion of June 1, 1931, made a part hereof by reference.)
The case is now before the court upon defendant’s motion for a reconsideration of its motion for a new trial overruled June 1,1931. This motion, filed by leave of court, is directed to the court’s Finding IX, a finding which discloses that 6,942 piles valued at $45,817.20 were ready for inspection,, *302 but were not inspected and not shipped to the site of the work, although they met in every particular the specifications of the contract for the same, were cut and finished in accord with the contract, and without previous warning, objection, or statement were refused acceptance, and after repeated efforts of the plaintiff to sell them, which failed, became a total loss to the plaintiff. The defendant now says, as has been previously said, that judicial precedent precludes a recovery for the above piles, because they were not actually used by the prime contractor and did not go into the completed structure, and that inasmuch as the remedial act of 1905 is likened to a material man’s lien under mechanics’ lien laws, only the value of such materials as were actually used by the contractor may be recovered. In other words, the contention of the defendant may be reduced to the single proposition that the liability of the Government under the special jurisdictional act is exclusively coextensive with the liability of the surety under the contractor’s bond. If A, a contractor, contracts with B to furnish and supply materials for specified contract work at an agreed-upon price, and B supplies and furnishes the materials in exact accord with the contract, has them ready for and tenders delivery, A may defeat his right of recovery under the statute by refusing to accept them, and contract for materials from another, and thereby accord the latter a lien which defeats the former because not used. The uniform rule established by judicial decisions is that the act of 1905 is decidedly remedial and hence should receive a liberal construction. In the case of Hill v. American Surety Company of New York, 200 U. S. 197, 203, the Supreme Court said:
“ Looking to the terms of this statute in its original form, and as amended in 1905, we find the same congressional purpose to require payment for material and labor which have been furnished for the construction of public works. The affidavit to be filed with the head of the department under the direction of which the work has been prosecuted requires the affiant to state that labor or materials for the prosecution of such work has been supplied by him, for which payment has not been made, and such persons are given a right of action on the bond in the name of the *303 United States. Language could bardly be plainer to evidence the intention of Congress to protect those whose labor or material has contributed to the prosecution of the work.”
The case of Brogan v. National Surety Co., 246 U. S. 257, involved indirect contributions to the successful prosecution of the work, services rendered, and materials furnished which did not go directly into the work, such as board to laborers employed by the contractor and furnished by another. The case of Title Guaranty & Trust Co. v. Crane Co., 219 U. S. 24, allowed recovery for cartage and towage of materials and compensation for drawings and patterns furnished the contractor for making molds for castings to go into the ship under construction. In United States Fidelity & Guaranty Co. v. Bartlett, 231 U. S. 237, recovery was granted for labor performed at a quarry fifty miles distant from the site of the work; also the wages of carpenters and blacksmiths who repaired the cars in which the stone was shipped, and likewise the wages of stablemen who fed and cared for the horses that moved the cars. It has been held that “ he who has supplied them [labor and materials] to a subcontractor may claim under the bond, even if the subcontractor has been fully paid. Mankin v. Ludowici-Celadon Co., 215 U. S. 533.” (Illinois Surety Co. v. John Davis Co., 244 U. S. 376, 380.) In the latter case Mr. Justice Brandéis, in construing the intent and scope of the act of 1905, said:
“ The purpose of the act was to provide security for the payment of all persons who provide labor or material on public work. This was done by giving a claim under the bond in lieu of the lien upon land and buildings customary where property is owned by private persons. Decisions of this court have made it clear that the statute and bonds given under it must be construed liberally, in order to effectuate the purpose of Congress as declared in the act. In every case which has come before this court, where labor and materials were actually furnished for and used in part performance of the work contemplated in the bond, recovery was allowed, if the suit was brought within the period prescribed by the act. Technical rules otherwise protecting sureties from liability have never been applied in proceedings under this statute.” (P. 380.)
*304 An extended list of cases cited in the Illinois Surety Co. case (supra, page 380) clearly establishes a course of judicial precedent extending to the act of 1905 a liberal construction so as to effectuate its purpose and make secure under its terms the claims of material men and laborers supplying and furnishing the prime contractor labor or materials. In the case of the American Surety Co. of New York v. Lawrenceville Cement Co., 110 Fed. 717, the act of August 13, 1894 (28 Stat. 278), later amended by the act of February 24, 1905, was directly involved, and in construing its scope the court said:
“ In using the expression which we have quoted from the statute and the bond, there can be no question that Congress had somewhat in mind statutes in various States giving liens on buildings and other property, real and personal, for labor and material. Nevertheless, this statute does not have the same aspect as the ordinary lien statutes referred to, and therefore the latter can afford only very general assistance with reference to the construction of the former. The ordinary lien statutes have been justly and strictly held to cover only what has added to the value of the property against which the lien is asserted, and therefore they are ordinarily administered to protect only what is actually incorporated into its substance. The underlying equity of these statutes requires them to be so limited in their application. Even this underlying equity is not applied with absolute strictness ; as, for example, with reference to a bill of lumber sold to one erecting a building, no distinction is made between those portions of it which are actually incorporated into the walls and those portions used in temporary carpenters’ stagings necessary to aid in construction. Such statutes commonly use expressions of this character: ‘ Whoever performs labor or furnishes materials in erecting, altering, or repairing a house, building, or appurtenances,’ — a form which has direct reference only to the labor or materials and the erection in which they are used; while in the statute under discussion the expression is broader, namely,£ in the prosecution of the work.’ The underlying equity of the lien statutes relates to a direct addition to the substance of the subject matter of the building, or other thing, to which the lien attaches, while the statute in question concerns every approximate relation of the contractor to that which he has contracted to do. Plainly, the act of Congress and the bond in the case .at bar are susceptible of a more liberal construction than the lien statutes referred to, and they should receive it. In the one case, as in the other, the dealings of the person who *305 claims the statutory security must approximate the work, and in the one case as well as in the other there must be a certain margin within which there will be difficulties in discriminating between what is and what is not protected. Nevertheless, we are not concluded by the decisions with reference to the ordinary State statutory liens. We can apply them only in a general way, and we are not so restricted by them as, to require a construction inconsistent with the remedial purposes of the statute now in issue.” (Pp. 719-720.)
The last two cases cited by defendant’s attorney in his motion for a reconsideration (United States v. Murdock, 99 Maine 258, and United States v. Moday, 28 Fed. (2d) 777), are, we think, inapplicable. In the former, although the bond furnished by the prime contractor was conditioned as required by an earlier act of Congress, i. e., August 13, 1894, to “ make payments to all persons supplying * * * labor and materials in the prosecution of the work * * it appeared that the material man, although he had a contract with the prime contractor to supply certain material, had not supplied the same — he had procured it in part, but had always retained it in his possession, had disposed of some of it elsewhere, and was gréatly delayed in demanding that the successors of the prime contractor pay him for the balance before delivery. In the latter decision defendant’s attorney has, we think, supplied a citation which fully supports the court. In disposing of the defense by the surety, in an action by a subcontractor, that the prime contractor had assigned a portion of the work' without the assent of the Government for the surety, the decision, referring to the statutory provision, said in part (p. 779) :
“ It expressly aims to protect those who furnish such labor and materials. The statute must be liberally construed to effectuate its purpose, and mere technical defenses in an action on a bond given under the statute are to be disregarded.” (United States v. Noel Construction Co., 1 Fed. (2d) 446; Illinois Surety Co. v. John Davis Co., 244 U. S. 376.)
While the cited cases in the briefs do not directly involve the precise state of facts in this case, we believe the words of the act of 1905, “ shall promptly make payments to all persons supplying him or them with labor and materials in the prosecution of the work,” and “ any person * * * who *306 has furnished labor or materials used in the construction * * * of any public building or public work,” are sufficiently comprehensive to include the plaintiff’s claim. It is not denied that the piles involved were, subsequent to the contract, manufactured from the wood in strict accord with the specifications; that all but the number now claimed for were inspected, shipped to the site of the work, accepted, and some of them paid for; that the remaining piles only awaited inspection and order to ship, and were embraced within the contract by the terms of which the plaintiff agreed to supply them. The remedy afforded a material man or laborer under the act of 1905 was, we think, intended to protect those whose contracts with the prime contractor brought them into direct relation with the subject matter of the contract, so that the default or pernicious conduct of the contractor might not forestall them from realizing what was due for materials supplied or furnished in the prosecution of the work.
It seems to us improbable that if the piles in suit had been shipped to the site of the work and not thereafter used or worked into the completed structure, the contractor’s failure to use them would not deprive the person supplying them of the accorded remedy, because they were not actually used. The Supreme Court in numerous decisions has not, as we view it, given to the act the restricted scope which the defendant so sedulously contends for.
The court allowed and included in its judgment an item of $1,108.80 for the conversion of a rafting gear used by the plaintiff in rafting the piles shipped to the site of the work. It is, we now think, extremely doubtful if this item may be allowable. The defendant’s contention that the item concerns an allowance for damages for conversion of property is, we think, tenable, and it will be excluded from the judgment. To this extent the defendant’s motion is allowable and will be allowed; otherwise it is overruled. The judgment heretofore awarded for $61,070.96 is set aside and a new judgment this day awarded the plaintiff for $59,362.16. It is so ordered.
Whaley, Judge; Williams, Judge; Littleton, Judge; and Green, Judge, concur.