Whaley, Chief. Justice,
delivered the opinion of the court:
These cases come before the court by special acts of Congress which differ only in the names of the plaintiffs and the descriptions of the land. The acts are otherwise identical and, therefore, the two cases will be treated together, and one of the acts is set out in the findings.
These acts provide a forum for the adjudication of the claims on applicable legal principles. The defendant’s liability must be established by evidence. Butler Lumber Company v. United States, 73 C. Cls. 270; Radel Oyster Company v. United States, 78 C. Cls. 816.
The facts in one case parallel those in the other.
The lands in controversy are located in Pacific County, State of Washington, being 160 acres, or a quarter section, to each plaintiff, a total of 320 acres.
The chain of title to these tracts is briefly as follows: By the Act of Congress dated February 14,1859,11 Stat. 383, the State of Oregon was granted certain lands for public-school purposes. These became known as “school” lands. Many of them were sold by Oregon to settlers, and Congress having authorized the creation of forest reservations, an Act of Congress, June 4, 1897, 30 Stat. 36, permitted the settler or owner of lands within the forest reservation to select in lieu thereof “a tract of vacant land open to settlement not exceeding in area the tract covered by his claim or patent.”
*169 The school lands thus used as a basis for a new selection are otherwise known as “base” lands, and the selected lands “lieu” lands.
On April 10, 1899, C. W. Clarke filed selections with the Eegister and Eeceiver of the General Land Office at Olympia, Washington (referred to as the Eegister), in lieu of base lands of equivalent area in a forest reservation in Oregon, the lieu selections comprising the entire section of 640 acres which subsequently the plaintiffs were to enter as homesteaders of 320 acres thereof, being 160 acres apiece.
Clarke’s lieu selections were numbered 490, being the east half of section 32, and 492, the west half of section 32, the land claimed by plaintiff Frank Eoss being entirely in Clarke’s selection 492 and that by Earl Eoss being partly in selection 492 and partly in 490.
Clarke received his title to base lands for selection 492 by patent from the State of Oregon. The application to purchase them was originally made by one S. D. Dandridge August 22, 1898, to whom the State of Oregon immediately issued a certificate of title. September 20, 1898, this certificate was assigned to Clarke, to whom the State on October 7, 1898, issued the patent. '
Clarke’s title to the base land for lieu selection 490 was derived differently. This base land was the subject of an application August 17, 1898, by S. Anderson, to whom the State of Oregon issued its certificate of title. Shortly thereafter, August 26, 1898, the certificate was assigned to J. H. Schneider, to whom the State issued its patent. Clarke obtained title by deed from Schneider.
Clarke thus held title to the base lands by or through patents from the State of Oregon.
Ultimately, on February 4, 1921, the United States, after extended proceedings, recited in the special findings of fact, issued patents to Clarke covering the 320 acres of lieu lands which are here the subject of claim by the plaintiffs, and at no time have documentary evidences of title issued from State or Federal government to the plaintiffs, nor have they derived title from anyone to whom such muniments of title have issued.
*170 Plaintiffs’ claims are based on the invalidity of the Clarke lieu selections, and their own preferential right to acquire the tracts in question as their own homesteads.
The facts relating to the lieu selections by Clarke are set forth in some detail in the findings. November 21,1902, The Commissioner of the General Land Office suspended the lieu selections for alleged irregularities, and on February 17,1904, an indictment was returned and filed against Frederick A. Hyde, John A. Benson, Henry P. Dimond, and Joost H. Schneider in the Supreme Court of the District of Columbia, charging them with conspiracy to defraud the United States out of large tracts of public land through fraudulent purchases of base lands included in which were the tracts offered as the base for Clarke’s lieu selections 490 and 492. The Schneider so indicted was Clarke’s grantor of.the base land for selection 490. The Hyde so indicted had as attorney for Clarke filed a motion in the General Land Office in April 1899 to review a rejection by the Eegister of Clarke’s selections, the Eegister being of the opinion that the selections were not in order because the lieu lands were unsurveyed. This rejection was reversed June 9, 1899, the selections accepted and approved by the Commissioner of the General Land Office, but no patents were then issued because the lands were still unsurveyed. Hyde’s connection as attorney for Clarke before the General Land Office was terminated immediately after the motion for review was filed.
Hyde and Schneider were convicted, Benson and Dimond acquitted. After the conviction the General Land Office conducted further investigations of Clarke’s lieu selections 490 and 492. It was during this extended period of investigation that the plaintiffs settled on the lands they now claim, and which were part of Clarke’s lieu selections. There appear to have been no claimants to the land adverse to themselves except Clarke. However, there had been previous settlers, but from them the plaintiffs secured relinquishment of all rights to the land.
Shortly after the plaintiffs made their physical entry upon the land they tendered applications with the General Land Office for entry under the homestead laws. The Eegister refused to receive them because of Clarke’s prior lieu selections. *171 Plaintiffs thereupon filed with that Office protests against approval of Clarke’s lieu selections, with request for a hearing. No hearings were ever granted plaintiffs on their applications.
The history of plaintiffs’ occupation of the lands in dispute is related in the findings and is not necessary here to review.
The plaintiffs were persistent in keeping their contest before the General Land Office. That Office pursued investigations for some years, although in ruling upon applications the validity of the Clarke selections appears to have been generally presumed except as to prior entries. It is to be noted that plaintiffs’ entries postdated the Clarke selections.
On August 13, 1913, the State of Oregon filed suit in the Circuit Court of Crook County, Oregon, against Hyde, Clarke’s assignee, and others for cancellation of the State deeds to the base lands on the ground that they were obtained in fraud of the public policy of the State. The case found itself on appeal in the Supreme Court of Oregon, which on January 8,1918, held that conspiracy was clearly proved and that Clarke was a party thereto. The United States, however, had refused to become a party to any of the proceedings, and in consequence the court dismissed the State’s complaint as to the base lands that had been conveyed to the United States in exchange for lieu selections, and this dismissal involved the lands embraced in the present suit by the Boss brothers.
Beginning in April 1920 events proceeded to a more rapid conclusion. The Attorney General of Oregon, the attorney for the lieu selector, the Commissioner of the General Land Office, and the Secretary of the Interior, or his office, appear to have worked out a settlement whereby the lieu selector was to pay the State of Oregon $7.50 per acre for the base lands, and the State of Oregon was to quitclaim its interest in such base lands to the United States.
The upshot of the matter was that on July 24, 1920, the State of Oregon by deed quitclaimed to the United States its interest in the lands in Oregon used as a base for the lieu selections in Washington that embraced the lands claimed by plaintiffs; on January 22,1921, the Commissioner of the General Land Office approved Clarke’s lieu selections for patent, *172 and on February 4,1921, the United States issued patents to Clarke covering the 320 acres of Clarke’s lieu selections in Washington, which the plaintiffs attempted to homestead and to which they have continuously laid claim.
As the matter now stands with relation to the land in controversy, patents therefor have been issued to Clarke, and the plaintiffs have received no muniments of title, never having gotten beyond the stage of settlement upon the land, securing relinquishments from preceding settlers, tendering applications for entry under the homestead laws, protesting against adverse claimants, and actively making known to the defendant their claims to the lands in question. That they were not allowed to make entry under the homestead laws was due to defendant’s officers in the presumed performance of their official duties.
The defendant has not deprived the plaintiffs of any land to which they had any claim of any nature which could be enforced before any tribunal or quasi tribunal. Plaintiffs have no right, title, or interest to any land, legal, or equitable. They simply gambled that the Clarke lieu selection would fail because of the controversies concerning the Oregon base lands and were endeavoring to put themselves in position to first file a homestead claim on the lands by securing the claims of squatters and a temporary residence. No title to the land was gained by their acts under the homestead laws because Clarke had already claimed the land under the lieu selection provision of law and no claim for homestead could be filed on the land. The officers of the Government were within their rights of office, as provided by law. when they refused to receive claims of homestead by the plaintiffs.
In Putnam v. Ickes, 78 Fed. 2d, 223, 226 (App. D. C. 1935), certiorari denied, 296 U. S. 612, the court said:
Appellants allege no interest in the occupied and patented lands other than that they are citizens of the United States, and as such have a right to make homestead entries upon the public lands of the United States. There is no principle better settled in our public land law than that a private citizen cannot initiate or acquire under the public land laws of the United States rights in land occupied by others who claim under the United States, even though the claim and occupation be fraudulent and wrongful as against the United States.
*173 , We can find no claim of any nature for which the defendant is liable to compensate the plaintiffs in any sum, legally or equitably. We cannot find such a claim as would justify recommending it to the conscience of the Congress.
Plaintiffs are not entitled to recover and their petitions are dismissed. It is so ordered.
Madden, Judge; Whitaker, Judge; and Littleton, Judge, concur.
Jones, Judge, took no part in the decision of this case.