# Richmond

## OLD DOMINION LAND COMPANY v. COUNTY OF WARWICK.

January 9, 1939.

Record No. 1988.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Browning and Eggleston, JJ.

The opinion states the case.

*Lett, Murray & Ford,* for the plaintiff in error.

*C. H. Sheild, Jr.,* for the defendant in error.

EGGLESTON, J., delivered the opinion of the court.

The question here presented is the validity of two ordinances enacted by the board of supervisors of Warwick county, the effect of which was to prohibit the Old Dominion Land Company from connecting several of its recently constructed residences in said county with a sewer line owned by the company and emptying raw or untreated sewage into the adjacent tidal waters of the James river.

The case was tried in the court below on an agreed statement of facts which discloses the following pertinent matters:

About fifty years ago the Old Dominion Land Company, a Virginia corporation, acquired a large tract of land in Warwick county, lying between the present northern corporate limits of the city of Newport News and the present southern corporate limits of Hilton Village. This property is bounded on the west by the James river, and on the east by the State Highway leading from Newport News to Richmond.

From time to time portions of this property have been subdivided into residential lots and sold. That portion of the land just north of the corporate limits of Newport News, and extending northwardly from 64th street to 68th street, was first developed. All of the lots in this subdivision have been sold and most of them are now occupied by residences. The sewer system accommodating this subdivision connects with the sewer line of the city of Newport News, which empties its untreated or raw sewage into the James river at 58th street, within the corporate limits of the city.

The property immediately north of the subdivision just mentioned was during the World War leased to the United States Government, and was occupied by a large camp in which several thousand troops were quartered at a time. For the use of the camp the government constructed a sewer system of its own. This consisted of a septic tank in which some of the sewage was treated, and also a cast iron pipe through which raw or untreated sewage passed around the

septic tank and emptied directly into the James river. When the government vacated the land both the septic tank and the by-pass pipe remained.

In 1930 the Old Dominion Land Company began to develop a portion of the property on which the camp had been located. Between 1930 and 1936 seven residences were constructed there and these were connected with the sewer system constructed by the government. Being out of repair the septic tank is not in operation and consequently the raw and untreated sewage from these houses empties directly into the James river at a point within the limits of Warwick county.

In 1936 the Old Dominion Land Company began the construction of twelve new residences on the property. It was contemplated that the sewer systems serving these houses would likewise be connected with the sewer line constructed by the government and emptying into the river. The county health officer declined to approve the connection of these houses with that sewer system, because, in the meantime, the board of supervisors had enacted two ordinances affecting the matter.

The first was an ordinance passed on March 5, 1936, in which it was provided that plans and specifications for all sewage disposal systems in the county must be approved by the county health or sanitation officer. It was further provided: "Satisfactory flush type of water closet may be used if connected with an approved sewer system or an approved septic tank system, provided this meets with the approval of the Health Officer or the Sanitation Officer of Warwick County." The ordinance carried a penalty of a fine for violation of its provisions.

The second was a resolution passed on October 6, 1936, directing the county health or sanitation officer not to approve "any sewerage system, nor any plans and specifications of any sewage system in Warwick County providing for discharging its sewage, in Warwick County, into James River nor any of its tributaries, * * * unless such sewage has been discharged into and duly treated in a disposal

plant, which plant and treatment have been approved by the Board of Health of the said County, and its Health and Sanitation Officer."

Notwithstanding the lack of approval by the county health or sanitation officer, the Old Dominion Land Company proceeded to connect these recently constructed houses with the sewer line emptying into the river.

Upon a warrant issued by the health officer the Land Company was convicted of violating the ordinances and was fined by the trial justice. The same result followed on its appeal to the circuit court.

It is important to bear in mind that there is no evidence or claim that any nuisance or injury to the health of the inhabitants of the county was created or threatened by the acts of the defendant company.

The contention of the Old Dominion Land Company is that, since the acts complained of do not constitute a nuisance or are not injurious to the health of the community, the county board of supervisors has no power or authority to pass laws prohibiting an owner of property, bordering on tidal waters, from emptying its sewage into such waters, but that the control of such matters is exclusively within the authority of the General Assembly. We are of opinion that this position is sound.

In *Hampton* v. *Watson*, 119 Va. 95, 98, 89 S. E. 81, L. R. A. 1916F, 189, this court said: "There is, however, a marked and well established distinction between the pollution of a small non-navigable stream and the pollution of large tidal, navigable bodies of salt water, for the reason that in the first case the bed of the stream and the waters are owned by the riparian owners, while in the latter case it is well settled that the bed of the navigable, tidal salt water and the waters themselves are owned and controlled by the State, for the use and benefit of all the public, subject only to navigation. It is for the State to say what uses shall be made thereof and by whom, subject always to the right of the public, and for the State, through the legislative branch of the government, to say how much pollution it will

permit to be emptied into and upon its waters, so long as the owners of the land between low water and high water mark are not injured, and there is no such claim in this case."

And again, in the same case, it is said (119 Va., at page 101, 89 S. E., at page 82) : "One great natural office of the sea and of all running waters is to carry off and dissipate, by their perpetual motion and currents, the impurities and off-scourings of the land. The owner of any lands bordering upon the sea may lawfully throw refuse matter into it, provided he does not create a nuisance to others."

These principles were reaffirmed in *Darling* v. *City of Newport News,* 123 Va. 14, 96 S. E. 307, 3 A. L. R. 748; *Id.,* 249 U. S. 540, 39 S. Ct. 371, 63 L. Ed. 759; *Commonwealth* v. *City of Newport News,* 158 Va. 521, 164 S. E. 689. See also, *Du Pont Rayon Co.* v. *Richmond Industries,* 85 F. (2d) 981.

In *Commonwealth* v. *City of Newport News, supra,* we pointed out, as illustrative of the principle that the prohibition of pollution of tidal waters is a matter within the control of the General Assembly, the passage of a number of recent acts prohibiting the discharge of sewage into such waters. See Acts 1914, ch. 307, p. 528; Acts 1930, ch. 147, p. 357.

Since that opinion was handed down, in 1932, the General Assembly has continued to deal with the matter in the same manner. For acts prohibiting the discharge of sewage into various tidal waters, see Acts 1936, ch. 122, p. 211; *Idem,* ch. 197, p. 334; *Idem,* ch. 345, p. 553; *Idem,* ch. 393, p. 650; *Idem,* ch. 393, p. 705, amending Code, section 3262. See also, Acts 1938, ch. 335, p. 510 authorizing the creation of sanitation districts and particularly the prohibition against the pollution of certain tidal waters as set out in section 22.

We think it is too well settled to admit of argument that, since the discharge by the Old Dominion Land Company of raw sewage into the tidal waters of the James river does not create a nuisance, or is not injurious to the

public health, it is within the province of the General Assembly alone to prohibit such act.

But counsel for the defendant in error argues that the General Assembly has delegated to it the necessary authority to prohibit the pollution of such waters by emptying raw sewage therein.

It is not necessary that we stop to consider whether the General Assembly may delegate such authority to one of its political subdivisions. We think it is clear that none of the statutes relied upon by the county was intended as such.

■ The county relies upon Code, section 2743, as amended by Acts 1924, ch. 193, p. 307; 1926, chs. 377, 520, pp. 665, 871; 1930, ch. 247, p. 664, sec. 83. This act confers upon boards of supervisors, among others, the power "To provide against and prevent the pollution of water in their respective counties whereby it is rendered dangerous to the health or lives of persons residing in the county;" and "To adopt such measures as they may deem expedient to secure and promote the health, safety, and general welfare of the inhabitants of their respective counties not inconsistent with the general laws of this State."

Clearly these provisions have no application to the present case, since, under the agreed statement of facts, the act of the company in draining its sewage into the river is not a nuisance, nor is there any evidence that it in any way endangers the health of the inhabitants of Warwick county.

■ The county next relies on Code, section 1544, which authorizes its board of supervisors to adopt rules and regulations for the construction, alteration and inspection of plumbing and sewer connections, and for the appointment of a plumbing inspector.

There is not the slightest suggestion in this section that it carries the implied authority to the board of supervisors to prohibit the emptying of sewage into a tidal stream.

■ Neither do we find in Code, section 2757, as amended by Acts 1924, ch. 416, p. 640; 1936, ch. 191, p. 327, any such delegation of authority. This section merely authorizes boards of supervisors to establish and maintain public

sewers and public water mains along the streets, alleys or public highway in incorporated towns, villages or suburbs in the counties. Moreover, the section expressly provides that, upon the failure of the board of supervisors to establish and maintain public sewers therein provided for, as is the case here, "any landowner shall have the right to establish and maintain a sewer from his land along any street, alley or public highway to the nearest natural water course."

It is significant, too, that since the enactment of the sections of the Code upon which the county relies, the General Assembly has continued to pass specific acts prohibiting the emptying of sewage into certain tidal waters whenever it has desired to accomplish that end. We have previously called attention to a number of these acts. This plainly indicates, we think, that the General Assembly believes that the necessary authority to prevent the pollution of such tidal waters still rests with it.

■ Our conclusion is that those provisions in the ordinances which prohibit or attempt to prohibit the emptying of raw or untreated sewage into the tidal waters of the James river, where such act does not constitute a nuisance or is not injurious to the health of the inhabitants of the county, are invalid.

The judgment complained of is reversed and the warrant is dismissed.

*Reversed.*