**LAW AND EQUITY COURT OF THE CITY OF RICHMOND**

Town and Country
Apartments and Townhouses

    v.

City of Richmond and
County of Chesterfield

October 6, 1972

By JUDGE A. CHRISTIAN COMPTON

Enclosed you will find a copy of the final decree entered today in favor of the plaintiff which declares that the plaintiff should direct its application for entry into Pocosham Creek Main Trunk for the presently proposed connection, and all future planned connections in the City of Richmond, to the City of Richmond; that the said city should grant such permission, at the duly established city connection rate, assuming of course that the application is otherwise proper; and that the County of Chesterfield refund to the plaintiff the sum of $11,100 previously paid under protest.

The suit involves a dispute between the plaintiff and the defendants and within that controversy is a dispute between the defendant City and defendant County. It all arises out of the recent annexation by the City of a portion of the County by decree effective January 1, 1970, and entered on July 12, 1969 (Exhibit A for a hearing hereon on June 1, 1972).

The plaintiff owns property which is in the newly annexed area. On this property, it is in the process of constructing 663 multifamily dwelling units called the Town and Country Apartments (D-1, 6/12/72). Prior to the

annexation, the County built a sewerage line known as Pocosham Creek Trunk (D-4, 6/12/72), the cost of such construction being defrayed, in part, by a payment of $60,000 by the plaintiff pursuant to a contract between the plaintiff and the County dated April 10, 1969. (P-1, 6/12/72.) The court has previously held by order herein of June 12, 1972, that this "developer participation agreement" has been fully executed.

This $60,000 covered the connection for sewer service of 200 residential units ("Phase I") at the then rate charged by the County of $300.00 per residential unit. This was actually called a "refund" to the plaintiff by the County from actual connection fee charges, pursuant to paragraph 11 of the April, 1969, contract. Effective on July 1, 1972, this County rate increased to $600.00 per unit. The City rate for connection to a sewer line under these circumstances is $229.99 *per connection* and therein lies the cause for this controversy.

The plaintiff seeks now to obtain permission to connect "Phase II" of its construction project. Previously, it had applied to the County for a permit to connect 37 dwelling units and under protest tendered on October 5, 1971, the sum of $11,100. (P-2, 6/12/72.) On October 8, 1971, it withdrew its application to the County and thereafter on November 8, 1971, applied to the City "requesting a sewer connection for 176 apartment and townhouse units in the Town and Country Apartments project." Letter of 11/16/71 in P-2, 6/12/72.

Now the plaintiff's property is located in the City as the result of annexation. The County owns that part of the Pocosham Creek Trunk within the boundaries of the City which serves the plaintiff.

The City planned to grant the application, issue the permit and forward the $229 to the County, under the terms of the "Twenty Year Sewer Contract" (D-1, 7/13/72.) but then refused to do so when the County objected maintaining that since it owns the line, it (the County) was entitled to receive the connection charges at the County rates pursuant to the terms of certain City-County discussions held between the time of the entry of the decree and the effective date of annexation, such discussions being held pursuant to the terms of such decree in paragraph

6 on page 7 of exhibit 108 thereof. See annexation decree and D-7, 6/12/72.

As the matter now stands, the plaintiff is being frustrated in its further development of its project because of its inability to obtain sewer service for this phase of construction. It has sought the aid of this court for a declaration of its rights. Ancillary to, but a part and parcel of, the plaintiff's dilemma is the problem between the County and the City, which issue the City has asked the court to resolve.

As stated, the County's position is (without waiving its objection to the court's prior action in holding the April, 1969, contract fully executed) that since it owns the Pocosham Creek Main Trunk, the plaintiff must pay a charge for connection into the line at the County rate, such amount being payable to the County. The County relies, first, on the terms of the annexation decree and specifically paragraph 6 on page 7 of exhibit 108. It contends that an oral agreement was reached in discussions held subsequent to the entry of the decree between City and County officials on this matter. It is not disputed that the plaintiff was not a party to either the annexation proceedings, the subsequent informal City-County discussions, or the 20 year City-County sewer contract.

Secondly, the County relies on Code, § 15.1-300 as authority for requiring the plaintiff to obtain permission from it for connection to the County line.

The City argues that the 20 year contract controls and that it was the culmination of the negotiations directed by the annexation court in exhibit 108. It asserts that the City shall collect at the City rate the connection charge, which should be forwarded to the County. The County argues that the 20 year contract deals only with sewage *treatment* and has nothing to do with *connection* fees.

The issue to be decided is, of course, which defendant should be required to issue the permit to the plaintiff and on what terms.

The plaintiff is now a citizen of the City. It was not a party to any of the proceedings or negotiations material to this dispute except the April, 1969, contract, which has been fully executed. The evidence is uncontradicted that other citizens of the City similarly situated have been issued permits by the City at City rates for

entry into the Pocosham line. (Transcript 7/13/72, pp. 24, 28, 29, 30, 32, 36.) To refuse the plaintiff a permit under these circumstances unless it paid the County rate would be treating this City citizen differently from others similarly situated, and this is prohibited. "A municipality has no more right to practice discrimination as to its services or the rates imposed therefor than does a privately owned public utility." *Roanoke v. Fisher*, 193 Va. 651, 658 (1952). See also *Montgomery v. Greene*, 65 So. 783 (Ala. 1914); *Montgomery v. Greene*, 60 So. 900, 902 (Ala. 1913). Except as otherwise provided by law, the plaintiff is entitled to the same treatment by the City of Richmond as others similarly situated therein.

But the County refers to Code § 15.1-300 and argues that its provisions require the plaintiff to pay the County rate for the connection. This section does not apply under these circumstances to this plaintiff. This section authorizes the County to enter the limits of the areas mentioned to "establish" or "cause to be established" sewers and water mains. Here, the sewer was already established and owned by the County and the County's jurisdiction over it was susceptible to the control of the annexation court. However, even if it be assumed that it applies in this annexation, it is doubtful that the section applies at all to the County. By its terms, it allows the governing body of the County, in order to protect the public health, to cause to be established and maintained public sewers along the streets "in any incorporated town, village or suburbs of any city" and allows connections thereto on such terms as the County shall prescribe. The area in dispute is located neither in a town or village. Moreover, it is not located in the "suburbs of any city" within the meaning of that Statute, as that phrase has been construed in dicta in *Old Dominion Land Co. v. Warwick County*, 172 Va. 160, 167-168 (1939). There, "suburbs of any city" was said to mean "suburbs in the counties" referring, of course, to that area in an adjacent county on the outskirts of a city but not within the corporate limits of the city proper. See Webster's New International Dictionary, Second Edition, definition of "suburb", p. 2516.

Code § 15.1-302 may be more applicable, assuming these statutes apply at all as aforesaid, because it deals directly with establishing sewers by a County in the corpo-

rate limits of a City and allows connections on such terms as the *City* may prescribe.

The County's other line of defense deals with the alleged agreement reached by the City and County during discussions held following the entry of the annexation decree. The City officials, the witnesses Allnutt and Talcott, testify, in effect, that the 20 year sewer contract was the extension of the annexation decree and that those documents control here. The County officials, the witnesses Burnett and Painter, testify that the 20 year contract does not relate to this dispute, but that in the meetings held following the entry of the decree, the City indicated it would raise its connection fees to the County rate so the County would have the benefit, at County rates, of the plaintiff's connection charges.

There is no dispute, however, that the parties defendant agreed that "[t]he sewer connection charges from the Town & Country Apartments are to be paid to the County except when such connections are to a line to be maintained by the City." See Mr. Talcott's testimony (T. 54) and Mr. Welchon's letter to Mr. Davison of 10/6/71 (P-2, 6/12/72).

Moreover, the County's evidence shows there was no agreement that the City would raise its rates. The witness Burnett testified that "[t]here was no agreement. We just understood it had to be, and we counted on it." Transcript of 7/13/72, page 93. There was an agreement that the County would receive the connection charge collected by the City but no agreement that such charge would be at the County rate.

Upon a consideration of all the evidence, the court finds as a fact that the plaintiff's position in this dispute is controlled by the provisions of the annexation decree as extended by the 20 year City-County contract and that under the terms of these documents, there is no requirement for the City, insofar as this plaintiff is concerned, to increase its connection charges to the County rate for connections directly into the County's sewer line. Reference is specifically made to the following portions of the annexation decree: the order itself in paragraph 9 on page 9; pages 6 and 7, paragraph C, of exhibit 108; and paragraph 9 on page 4 of the Summary of Agreement.

For these reasons, the prayer of the plaintiff's bill is granted except that no injunction is entered at this time since the court will not presume that the County will not comply with the declaration of the rights of the parties made herein.