## DEVINE ALLGOR, PLAINTIFF, v. MONMOUTH COUNTY WATER COMPANY, DEFENDANT.

Argued October 8, 1924—Decided May 5, 1925.

Water—Pollution of Streams—Water Company, in Purifying Its Water, Used Large Quantities of Chemicals Which Plaintiff Urges Caused the Death of Oysters in His Beds Below—Defendant Contended That Other Things in the River Affected the Oysters—Case Belongs to the Class Which Obliges the Plaintiff to Prove That the Natural and Proximate Result of the Defendant's Action Has Occasioned the Loss for Which He Sues, and Held, Sufficient Evidence to Justify Case Going to Jury—Polluting the Stream Was Actionable—Judgment For Plaintiff Sustained.

On defendant's rule to show cause.

Before GUMMERE, CHIEF JUSTICE, and Justices PARKER and KATZENBACH.

For the plaintiff, *Harry R. Cooper*.

For the defendant, *Durand, Ivins & Carton*.

PER CURIAM.

This case is before us on a defendant's rule to show cause. The plaintiff, Devine Allgor, is the lessee from the State of New Jersey of oyster beds in Shark river. The defendant, Monmouth County Water Company, operates a water plant located on Jumping brook. This brook flows into Shark river. The defendant's water plant is about a mile from the point where the brook enters the river. The oyster beds of the plaintiff are about three hundred yards from the point where the brook enters the river.

The suit was instituted to recover damages which the plaintiff claimed he had received from the discharge into the brook by the defendant of the sedimentation formed in the tanks or basin of the filtration plant. The plaintiff con-

tended that this sedimentation was carried down the brook and lodged upon his oyster beds and either poisoned or suffocated his oysters. The testimony showed that oysters will only drink water that is pure. If the water is polluted oysters will not drink, and, by not drinking, suffocate.

The evidence showed that the defendant in the filtration of its water used large quantities of chemicals. These chemicals consisted of alum and hydrated lime. They were used in the filtration plant for the purpose of purifying the water. In the year 1921 two thousand one hundred and eighty-three pounds of alum and two thousand seven hundred and seventy-four pounds of lime were used for this purpose. These amounts have since been increased. The defendant cleansed its sedimentation basin twice a year. The size of the basin at the bottom was one hundred and sixty-six feet by seventy-seven feet. The average depth is seven and one-half feet. The sediment, before the basin was cleaned, averaged in depth from six to eighteen inches. In one year ninety-eight thousand pounds of this sediment was discharged into Jumping brook from two cleansings of the basin. Jumping brook is six feet in width. It was originally a stream of pure water. The testimony offered by the plaintiff showed that the sedimentation, after being emptied into the brook, passed down the brook, and then spread over the oyster beds of the plaintiff. The sedimentation was some eight or ten inches thick in the brook. When it reached Shark river it would spread over a greater surface, so that its thickness was reduced to some two or three inches.

The contention of the defendant was that the plaintiff's oysters were affected by other things, such as the tar and oil which collected in Shark river. It was further contended that the oyster beds in Shark river had from year to year produced less oysters, and that the emptying of the sedimentation from its filtration basin was not the natural and proximate result of the plaintiff's loss of oysters.

This case falls within that class of cases where the plaintiff is obliged to prove that the natural and proximate result

of the defendant's action has occasioned the loss for which he sues.

The defendant argues that the court erred in refusing to direct a verdict for the defendant. We think the trial court justified in refusing to grant the defendant's motion. We think that there was evidence introduced by the plaintiff sufficient to justify a trial court in submitting the case to the jury to determine whether or not the action of the defendant in polluting the brook had occasioned the plaintiff's loss of oysters. The act of the defendant in polluting the brook was actionable. The defendant discharged into the brook a great quantity of foreign matter which it had collected in its tanks by the use of the chemicals referred to. This foreign matter produced hydro-oxides, carbides, &c., which the evidence showed was injurious to oysters. We think from the testimony offered that the plaintiff was entitled to have the jury pass upon the question as to whether or not the defendant's actions were not the natural and proximate result of his loss.

The next point argued by the defendant is that the verdict is contrary to law and contrary to the charge of the trial judge. Under this point the defendant presents the same question as to the natural and proximate cause which has already been considered. We think we have said sufficient upon this point.

The third point is that the charge of the trial judge to the jury is contrary to the law. Under this point the defendant discusses the charge of the trial court upon the subject of the measure of damages. We have examined what the trial judge said upon this point, and feel that he charged the law correctly.

The next point argued by the defendant is that the verdict is against the clear weight of the evidence. We think that it is not. The rule to show cause is discharged.