### DU PONT RAYON CO., Inc., v. RICHMOND INDUSTRIES, Inc., et al.
### No. 4057.

Circuit Court of Appeals, Fourth Circuit.
Oct. 6, 1936.

982

J. Gordon Bohannan, of Petersburg, Va., and Carl E. Geuther, of Philadelphia, Pa. (Abel Klaw, of Philadelphia, Pa., on the brief), for appellant.

R. E. Cabell and Collins Denny, Jr., both of Richmond, Va. (Charles S. Valentine, of Richmond, Va., on the brief), for appellees.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

PARKER, Circuit Judge.

This is an appeal from an order denying an interlocutory injunction and dismissing the bill of complaint in a suit instituted to enjoin a manufacturing corporation of Richmond, Va., from discharging waste from its dyeing plant into the James river. The complainant, the Du Pont Rayon Company, Inc., owns a large plant for the manufacture of "Rayon" and "Cellophane," which is situate on the James river about four miles below the city of Richmond. It alleges in its bill that it uses large quantities of water from that river in the manufacture of rayon and cellophane; that it is necessary that the water so used be free of dyestuffs, as their presence in the water in the proportion of even a small fraction of one part per million will discolor the rayon and cellophane of its manufacture and greatly depreciate the value thereof; that the defendants are about to erect a dyeing plant and to engage in the business of dyeing fabrics in the city of Richmond; that such plant will discharge its waste, a large part of which will be dyestuffs, through sewers into the James river above the water intake line of complainant; and that such discharge will pollute the waters of the river which are necessary for the operation of complainant's plant and will thereby result in great injury and damage to complainant's property.

While complainant does not specifically allege that defendants will discharge the waste from their dyeing plant through the sewers of the city of Richmond, it does allege that their plant is within the corporate limits of the city and that they are the owners of certain sewer and water lines connected with their property; and it was established by affidavit in the court below and was not denied, either there or in this court, that defendants' purpose was to discharge the waste from their plant through the city sewers. It is admitted that the city sewers discharge into the river below the beginning of tidewater and about four miles above the plant of complainant.

The court below was of the opinion that, in view of the facts as disclosed by the pleadings and affidavits, no case was made for an interlocutory injunction, whatever view might be taken of the law, and, even if we were of opinion that the court's view of the law was erroneous, we would affirm this holding. There is nothing in the record to show any abuse of discretion; and exercise of discretion in granting or refusing an interlocutory injunction will not be reviewed in absence of abuse. National Fire Ins. Co. v. Thompson, 281 U.S. 331, 338, 50 S.Ct. 288, 291, 74 L.Ed. 881; United Fuel Gas Co. v. Public Service Commission, 278 U.S. 322, 49 S.Ct. 157, 73 L.Ed. 402; State of Alabama v. United States, 279 U.S. 229, 231, 49 S.Ct. 266, 73 L.Ed. 675; Sinclair Refining Co. v. Midland Oil Co. (C.C.A.4th) 55 F.(2d) 42, 45. The court went further, however, and dismissed the bill; and this brings before us the question whether the bill, in the light of the admissions to which we have adverted, makes a case for injunctive relief. We agree that it does not.

It is well settled, of course, that the nature and extent of the rights of complainant, as a riparian owner, to the use of the waters of a stream within the state of Virginia, is to be determined by the law of that state as set forth in its statutes and the decisions of its courts. Fox River Paper Co. v. Railroad Commission of Wisconsin, 274 U.S. 651, 47 S.Ct. 669, 71 L.Ed. 1279. And we think it clear that, while the riparian owner is entitled under the law of Virginia to make a reasonable use of the water as it flows past or laves his land (Taylor v. Commonwealth, 102 Va. 759, 47 S.E. 875, 102 Am.St.Rep. 865), this right on tidal, navigable waters is subject to the jus publicum, or right of the public, to use the waters for sewerage purposes (City of Hampton v. Watson, 119 Va. 95, 89 S.E. 81, L.R.A.1916F, 189; Darling v. City of Newport News, 123 Va. 14, 96 S.E. 307, 3 A.L.R. 748; Id. 249 U.S. 540, 39 S.Ct. 371, 63 L.Ed. 759; Commonwealth of Vir-

ginia v. City of Newport News, 158 Va. 521, 164 S.E. 689, 699).

In City of Hampton v. Watson, supra, which involved liability for damage done to an oyster bed by emptying of sewage into Hampton creek, a navigable, tidal stream, the court held that, although the commonwealth owned the land upon which the oyster bed was situate and had leased it to the plaintiff, the rights of plaintiff with respect thereto were subject to the rights of the public to use the waters in question for sewerage purposes, and drew a distinction between rights with respect to navigable, tidal waters and other waters flowing through the state (a distinction in accord with the current of authority, 9 R.C. L. 682). In Darling v. City of Newport News, supra, in which the same question was involved, the holding in City of Hampton v. Watson was affirmed and express approval was given to the following statement of the law as contained in its syllabus, viz.:

"1. There is a marked and well-defined distinction between the pollution of a small nonnavigable stream and the pollution of large tidal navigable bodies of salt water, for the reason that in the first case the bed of the stream and the waters are owned by the riparian owners, while in the latter case the bed of the navigable, tidal salt water and the waters themselves are owned and controlled by the state, for the use and benefit of all the public, subject only to navigation. It is for the state to say what uses shall be made thereof and by whom, subject always to the right of the public, and for the state, through the legislative branch of the government, to say how much pollution it will permit to be emptied into and upon its waters, so long as the owners of the land between low-water and high-water mark are not injured.

"2. A municipal corporation situated on an arm of the sea, adjacent to tidal waters, has the right to use such waters for the purpose of carrying off its refuse and sewage to the sea, so long as such use does not create a public nuisance, and any injury occasioned thereby to private oyster beds is damnum absque injuria."

When the Darling Case was before the Supreme Court of the United States, Mr. Justice Holmes, speaking for the Court, pointed out that "the mere ownership of a tract of land under the salt water would not be enough of itself to give a right to prevent the fouling of the water as supposed. The ownership of such land, as distinguished from the shore, would be subject to the natural uses of the water. So much may be accepted from the decisions in Virginia and elsewhere as established law." See 249 U.S. 540, at page 543, 39 S.Ct. 371, 372, 63 L.Ed. 759. It is manifest that the right of a riparian owner to prevent the pollution of water could be no greater than that of the owner of the land over which the water flows; and it must be borne in mind here that the question involved relates merely to the right of the riparian owner to use the water and prevent pollution thereof, not to the fouling of land of which he is owner.

In Commonwealth of Virginia v. City of Newport News, supra, decided in 1932, the Supreme Court of Appeals of Virginia reaffirmed the rule, saying: "The use of tidal waters for discharge into them of sewage is a public use. See Darling v. Newport News, 123 Va. 14, 96 S.E. 307, 3 A.L.R. 748, and Hampton v. Watson, 119 Va. 95, 89 S.E. 81, 82, L.R.A.1916F, 189, where the court quotes with approval from Sayre Co. v. Newark, 60 N.J.Eq. 361, 45 A. 985, 48 L.R.A. 722, 83 Am.St.Rep. 629, as follows: 'Indeed, the history of sewers shows that from time immemorial the right to connect them with navigable streams has been regarded as part of the jus publicum. * * * And, whenever tidal streams can conveniently be reached, they have been employed as the medium of discharge to the sea. Such a use of public waters must necessarily entail some defilement. The degree of pollution to be permitted is a matter over which the Legislature has full power and control.' "

The decisions from which we have quoted would seem to leave no doubt either as to the right of the public to use tidal, navigable waters in the state of Virginia for sewerage purposes, or as to the rights of private persons with respect to the use of such waters being subject to such public right. Inasmuch as these decisions quote with approval the decision of the New Jersey Court of Errors and Appeals, it is of interest to note that the decisions of that state draw clear distinction between the rights of riparian owners on tidal and nontidal streams and even between riparian owners above and below the ebb and flow of the tide on the same stream. Cf. Marcus Sayre Co. v. Newark, 60 N.J.Eq. 361, 45 A. 985, 48 L.R.A. 723, 83 Am.St.Rep.

984

629, and Simmons v. Paterson, 60 N.J.Eq. 385, 45 A. 995, 48 L.R.A. 717, 83 Am.St. Rep. 642. See, also, note in 84 Am.St.Rep. 921–922; 15 British Ruling Cases, 1027–1028.

█ It is held that even as to tidal streams there is liability for pollution resulting from negligence or from an unreasonable use of sewers. See note, 84 Am.St.Rep. 922, and cases there cited. But nothing is alleged in the bill here which would justify the granting of relief on such ground. There is nothing unreasonable in a city's permitting manufacturing plants located within its limits to discharge industrial waste containing chemicals and dyestuffs through the city sewers; and there is no allegation as to any negligence in the construction of the sewers or in the way that the sewage is handled. It is said that defendant is not a riparian owner, and therefore has no right to use the stream for sewerage purposes, even if such right should belong to a riparian owner; but certainly the inhabitants of a city are not to be denied the right to use the public sewers emptying into a tidal stream because they are not riparian owners on such stream.

The question in the case is not as to the right of complainant as a riparian owner to make use of the water which flows by its land. That right under the law of Virginia must be conceded; but it is a right which is subject to the superior right on the part of the public to the use of a navigable stream below the ebb and flow of the tide for purposes of sewage disposal. If the waters of the stream become polluted from such user, no right of the riparian owner is invaded, because his right to use such waters is subject to the superior right of the public; and any damage which he sustains because of the public use is damnum absque injuria. If complainant needs water of peculiar purity for manufacturing purposes, it should be careful to locate its plant on a stream not subject to such a right of user on the part of the public; for it is clear under the law of Virginia that neither the public health nor the industrial development of its tidewater cities, both of which are dependent upon sewage disposal, can be subordinated to the rights of a riparian owner to make use of public waters for private purposes.

For the reasons stated, the decree denying the interlocutory injunction and dismissing the bill will be affirmed.

Affirmed.