GREGORY v. UNITED STATES.

No. 45570.

Court of Claims.

Dec. 4, 1944.

970

John W. Townsend, of Washington, D. C., for plaintiff.

J. W. Hussey, of Washington, D. C., and Samuel O. Clark, Jr., Asst. Atty. Gen. (Robert N. Anderson and Fred K. Dyar,
both of Washington, D. C., on the brief), for defendant.

Before WHALEY, Chief Justice, BOOTH, Chief Justice (retired; recalled), and LITTLETON, WHITAKER and MADDEN, Judges.

LITTLETON, Judge.

Plaintiff's first claim that the special act of May 9, 1941, concedes liability cannot be sustained. Special jurisdictional acts such as this one are to be strictly construed, and they are never construed to concede liability unless the language of the act in that regard is very clear. Sioux Tribe of Indians v. United States, 97 Ct. Cl. 613, 663–665. The reports of the Claims Committees of Congress on the act disclose no intention to concede liability. A bill, S.1591, was first introduced in the Senate in 1937 to pay plaintiff $23,000 plus interest in settlement of his claim for damages which he alleged were occasioned by the levying of the tax lien without his having been given a hearing on the matter of his tax liability. This bill was not enacted, but in December 1939 a bill to confer jurisdiction upon this court was introduced in the House which resulted in the enactment of the act quoted in finding 1, on May 9, 1941, H.R. 4063, 55 Stat., Part 2, 904. The bill as originally introduced and as finally enacted conferred upon this court jurisdiction, notwithstanding the lapse of time or any provision of law to the contrary, to hear, determine and render judgment upon the claim of plaintiff "for damages alleged to have been sustained by him as a result of the loss of and on certain property, * * * due to liens filed against such property, in the year 1931, * * *." In submitting his report to Congress on the proposed jurisdictional act, the Secretary of the Treasury stated that "Unless the proposed legislation is enacted, the claim for damages in question would come without the jurisdiction of the Court of Claims in that the alleged cause of action is in the nature of a tort and for the further reason that the action would be barred by the statute of limitations." In his petition to Congress that it enact the jurisdictional act plaintiff stated: "He now prays that the Congress will pass a bill to refer his claim to the Court of Claims that they may give said Gregory his day in court and make findings on the merits of case according to the law and the evidence." The Congressional Committees in recommending pass-

age of the act set forth that "The present bill merely confers jurisdiction upon the Court of Claims of the United States and in view of the complete testimony which has been presented by the claimant, your committee is of the opinion that he should be given his day in court." There was clearly no concession of liability.

The ground of plaintiff's claim on the merits for damages is that the Commissioner's Office in Washington was guilty of gross official carelessness in denying him an opportunity to be heard before assessment by mailing the 60-day deficiency notice of March 11, 1931, to plaintiff at an alleged improper address, i. e., to the Marion Hotel, Little Rock, Ark., instead of to his "last known address" at 2014 Glendon Avenue, Westwood Hills, Los Angeles, California, as mentioned in his letter of January 1931 written from the Marion Hotel, Little Rock, Ark. It is also claimed that failure to mail the deficiency notice to the proper "last known address" rendered the assessment illegal and void.

■ A study of the record and the facts as set forth in the findings discloses that plaintiff was dilatory and negligent in not properly handling his tax controversy from the beginning and in not giving the Commissioner proper or definite information as to his regular or permanent residence or address, either in or outside of Arkansas. Plaintiff filed his return in Arkansas and the Commissioner had a right to assume that plaintiff had his permanent residence in Arkansas, and Little Rock was the only address he had. The income tax statute (section 53(b) (1), Revenue Act of 1928, 26 U.S.C.A. Int.Rev.Acts, page 367, as well as corresponding sections of all prior acts) provided that, in case of individuals, "Returns * * * shall be made to the collector for the district in which is located the legal residence or principal place of business of the person making the return, or, if he has no legal residence or principal place of business in the United States, then to the collector at Baltimore, Maryland." The return for 1928 filed with the Collector at Little Rock, Ark., was prepared by an agent (the auditor for the Gregory Bus Lines, Inc.) and showed the address in Memphis, Tenn., of the agent and the Bus Lines. It disclosed no address of plaintiff in Arkansas, and stated that Gregory was "temporarily residing in California." This return, which was forwarded to the Commissioner by the Collector at Little Rock,

Ark., disclosed income by plaintiff, as president of the Gregory Bus Lines, Inc., with principal office at Memphis, Tenn., and also the sale by plaintiff of all the stock of the Bus Lines to the Consolidated Utilities, Inc., May 29, 1928. The return was therefore sent to the Internal Revenue Agent in Charge at Nashville, Tenn., for investigation and audit. The audit was made and a report thereof was submitted to the Commissioner October 31, 1930, and a copy was furnished to plaintiff. In the meantime plaintiff and his wife separated while they were temporarily residing in California, and, as a result of litigation between them, a receiver in Memphis, Tenn., took possession of certain of plaintiff's property (see finding 5). As a result, the Commissioner made a jeopardy assessment against plaintiff December 11, 1930, under the receivership provision of section 274(a), Revenue Act of 1928, of an additional tax of $13,-973.61 shown by the audit above mentioned, and claim therefor was filed with the receiver. Plaintiff received due notice of this additional tax and interest assessment, together with a full explanation of the computation thereof, and protested it in a letter to the Commissioner written from 2645 Oakview Terrace, Maplewood, Mo., and asked for a hearing at Memphis, Tenn. This letter was acknowledged and plaintiff was informed that he would be advised as early as practicable with reference to the hearing at Memphis. In the meantime plaintiff wrote the Commissioner the letter of January 19, 1931, from the Marion Hotel, Little Rock, Ark., quoted in finding 5, and thereafter received, in California, the Commissioner's reply of January 26, also quoted in finding 5. Plaintiff did not go to Nashville for a hearing.

On March 3, 1931, the Commissioner upon finding that a receiver in Tennessee had not been appointed to take over all the property of plaintiff, withdrew and cancelled the jeopardy assessment which had been made under the receivership section, 274 (a), because that section was not applicable in the circumstances, and so notified plaintiff in care of the receiver at Memphis, but the Commissioner did not withdraw and there was nothing in this notice which plaintiff received, or elsewhere, to indicate to plaintiff that the Commissioner intended to eliminate or withdraw the Government's claim against plaintiff for the additional tax for 1928. The matter was then entirely open to plaintiff, as it had

been since December 11, 1930, to make a proper showing by submission of proper proof that the claimed additional tax was excessive. Plaintiff did not do this and he did nothing further until he received on June 6, 1931, at Clayton, Mo., through his attorney, Wilfred Jones, notice and demand from the collector at Little Rock, Ark., for the additional tax assessed in May 1931 of $13,973.61 and interest of $1,848.73. On June 22, 1931, plaintiff wrote the collector at Little Rock stating that he did not owe the tax, and further stating that "Some time ago I requested your Nashville, Tenn., Agent to permit me to appear before them and protest against such assessment as was claimed as I told them at that time that I had paid all that was due and that I did not owe this and they said they would notify me when they would hear me on the matter, to date this is the first I have heard." Plaintiff must have had reference to his letter to the Commissioner of December 29, 1930 (finding 5), for there is no evidence that he subsequently wrote the Nashville, Tenn., office in an endeavor to have a hearing before the Agent in Charge at Nashville.

■ Subsequent events and the filing of the lien August 13, 1936, are sufficiently detailed in findings 7 to 12, inclusive. Plaintiff wrote a number of letters from various places, as the findings show, but in none of them except the letters of October 2 and 14, 1931, did he present any proper evidence or facts to the Commissioner or the Agent in Charge in support of his assertion that the additional tax for 1928 was excessive, or advise the Commissioner where the facts relied on could be found. It was his duty to properly prosecute his claim and to protest by submitting evidence of the value of the stock and notes of the Consolidated Utilities, Inc., which he knew at all times after December 11, 1930, were the basis of the claimed additional tax.

■ The claim of "gross official carelessness" or negligence on the part of the Commissioner's Office will first be discussed. If plaintiff has failed to establish by the greater weight of the evidence that the Commissioner's Office was negligent or careless in connection with the mailing of the deficiency notice, he cannot recover. The claim is one sounding in tort, and the limitation on our jurisdiction in that regard has been waived. If the evidence here shows that the Commissioner's Office acted with reasonable care under the facts and circumstances and under the pertinent statutory provisions as to his duty in the premises in connection with mailing of the deficiency notice to plaintiff, care of the Marion Hotel, Little Rock, Ark., then plaintiff cannot recover damages on the ground that he did not have an opportunity after March 11, 1931, to appeal to the Board of Tax Appeals before assessment of the deficiency in May 1931, or on account of the filing of the lien. The case is somewhat unusual in that plaintiff was first officially and formally notified December 11, 1930, of the Government's claim against him for the additional tax of $13,973.61, and its claim for that additional tax was never withdrawn or cancelled. Although this was not the deficiency notice mentioned in sec. 272(a), plaintiff had a period of three months before the mailing of the deficiency notice of March 11, 1931, within which to show that the tax was excessive; he was afforded every proper opportunity to do so, but he did not avail himself of it. Since plaintiff had not done this, the Commissioner, after he had withdrawn the jeopardy assessment under section 274(a), was required either to make another jeopardy assessment under section 273(a), Revenue Act of 1928, and mail a deficiency notice within 60 days thereafter, or mail a deficiency notice before assessment under section 272(a) of that act. The Commissioner acted under the latter section. This section provides that when the Commissioner determines that there is a deficiency in tax he shall send notice thereof to the taxpayer by registered mail, and that within 60 days after such notice is mailed the taxpayer may file a petition with the Board of Tax Appeals (now the Tax Court) for a redetermination of the deficiency. The section further places a prohibition (where collection is not jeopardized) upon assessment and attempt to collect without the mailing of the 60-day notice and for specified periods thereafter by providing that "No assessment of a deficiency * * * and no distraint or proceeding in court * * * shall be made, begun, or prosecuted until such notice has been mailed to the taxpayer, nor until the expiration of such 60-day period, nor, if a petition has been filed with the Board, until the decision of the Board has become final." The levying of a lien is within this prohibition. However, the section further provides, for the protection

of the taxpayer, that "Notwithstanding the provisions of section 3224 of the Revised Statutes the making of such assessment or the beginning of such proceeding or distraint during the time such prohibition is in force may be enjoined by a proceeding in the proper court." Subsection (k) of section 272 provides that "notice of a deficiency in respect of a tax imposed by this title, if mailed to the taxpayer at his last known address, shall be sufficient for the purposes of this title * * *."

██ Plaintiff says that his "last known address" within the meaning of subsection (k) was 2014 Glendon Ave., Westwood Hills, Los Angeles, Calif., and that the Commissioner violated section 272 (a) and (k) in sending the deficiency notice care of the Marion Hotel at Little Rock, Ark., and that he was guilty of negligence in not mailing the notice to the Los Angeles, Calif., address. Upon the facts disclosed by the evidence and the circumstances, we do not think the Commissioner was negligent or careless nor do we think he violated the statutory provisions mentioned (see finding 10). When the Commissioner came to the mailing of a deficiency notice he was in a position where he had to decide whether, under section 272(a) and (k), it should be mailed to the temporary California address of uncertain duration given about two months earlier or whether he should mail it to what he appears to have believed was plaintiff's permanent residence or address in Arkansas where he had filed his return. The Commissioner appears to have believed that Little Rock, Ark., was plaintiff's legal and permanent address. He was not required to make an independent investigation. The paramount duty rested upon plaintiff to supply the Commissioner with proper information as to his permanent address, or as to a temporary residence or address of a definite period. The Commissioner was entirely justified in assuming that plaintiff's legal and permanent residence was in Arkansas. Plaintiff had so indicated under section 53(b) (1) of the 1928 Revenue Act by filing his return at Little Rock. The fact, as it turned out, that plaintiff would have received the deficiency notice if it had been mailed to the temporary California address is not controlling on the question of whether plaintiff is entitled to recover damages.

██ A consideration of the language of section 272(k) in the light of the Reports of the Congressional Committees with reference thereto indicates that the phrase "last known address" of the taxpayer had reference to the last known permanent address or legal residence of the taxpayer, or the last known temporary address of a definite duration or period to which all communications during such period should be sent. Any other interpretation would place the Commissioner in an awkward and uncertain situation and would open the door to numerous complaints such as this one. Many taxpayers, especially business men, travel from place to place, but they nearly always have a permanent address at or from which they will receive mail. The trouble with plaintiff was that, as he testified, he had no permanent address or residence during the year 1931. But the Commissioner did not know this. Plaintiff further testified, however, that after the fall of 1928 the Marion Hotel at Little Rock was the only address which he ever had in Arkansas when he was there. He further testified that he never left forwarding addresses. The statute obviously was intended to protect the Government against such conditions, rather than placing upon its officials the duty and responsibility of finding out before mailing a deficiency notice whether the last known address in the state where the return was filed was a proper address, or whether or not a taxpayer was still at some temporary address of uncertain duration, and especially a temporary address which had been given for a definite and specific purpose which had already been accomplished.

Plaintiff testified that from 1910 he lived at the Marion Hotel whenever he was in Little Rock, and he appears to have been there often and for considerable periods. He also testified that during the time he was "in the bus business" he maintained a room at the Marion Hotel "practically all the time." There is no evidence how much time, if any, plaintiff spent at Parkin, Ark., which address the Commissioner did not have, and which plaintiff testified was his permanent legal residence when he filed his return but was not his residence after the fall of 1928.

██ The provisions of section 272(k), Revenue Act of 1928, with reference to the "last known address" were first enacted in section 281 (d), Revenue Act of 1926, 26 U.S.C.A. Int.Rev.Acts page 214, and then related only to the mailing of a deficiency notice to a person acting in a

fiduciary capacity, such as a guardian, trustee, executor, administrator, receiver, or conservator, or to a transferee of assets of a taxpayer; or to the taxpayer (for whom or in the place of whom such person may be acting) "at his last known address" in case the Commissioner was not notified of the fiduciary or transferee to whom the notice might be mailed. (See Senate Finance Committee Report No. 52, 69th Cong., 1st Sess., p. 30). In 1928 the provision was made applicable to the mailing of deficiency notices generally, committee report on the 1928 Act (House Ways and Means Committee Report No. 2, 70th Cong., 1st Sess., p. 22), stating that "It is obviously impossible for the Commissioner to keep an up-to-date record of taxpayers' addresses. Where a taxpayer has changed his address without notifying the Commissioner, it is not possible to be sure that the deficiency letter is being sent to his last address. It is provided in the above section (272 (k)) that the deficiency letter may be mailed to the taxpayer at his last known address and, if so mailed, it will "be sufficient for the purposes of this title * * *." This explanation indicates that, by the statutory reference to "the last known address" of the taxpayer, Congress had in mind and intended the taxpayer's regular or permanent address, or residence, and to a change thereof without notice. It would be unreasonable to hold that it had reference to notice of a temporary address in connection with a trip to some other place indefinite and uncertain in duration, and especially is this true where the notice of the temporary address given was for the purpose of being advised with reference to a specific matter. At this point it is pertinent, for the purpose of determining whether the Commissioner was negligent, to look into the circumstances under which and the purpose for which plaintiff wrote the Commissioner on January 19, 1931. It will be seen from the findings that plaintiff had written the Commissioner from Maplewood, Mo., protesting the deficiency of $13,973.61, notice of which was mailed him December 11, 1930, and was received December 18 (the same deficiency which was later assessed the second time and with respect to which the lien was subsequently filed), and asked for a hearing at Memphis, Tenn. The Commissioner wrote him at Maplewood, Mo., telling him that he would be further advised about the matter as soon as practicable. Before the matter of the hearing which plaintiff had requested at Memphis had been decided upon and arranged for by the Commissioner to be held at Nashville instead of at Memphis, the Commissioner received plaintiff's letter from the Marion Hotel, Little Rock, Ark., in which he acknowledged receipt of the letter sent to Maplewood, Mo., which he stated had been "forwarded to me here." This letter of January 19 was not a notice of change of plaintiff's residence or address in Arkansas within the meaning of section 272(k); it related only to the matter of being notified with reference to the hearing which had been requested, and stated that "I am leaving today for Los Angeles, Calif., where I expect to remain for several months, * * *. So please advise me there when my petition for a hearing will be had, and I wish to handle the matter there if it is possible." Soon thereafter the Commissioner in a letter of January 26, 1931, sent to the Los Angeles, Calif., address replied to this letter, as well as to the letter of December 29, 1930, both relating to a hearing (see finding 5), and told plaintiff that it was impractical to grant a hearing in California and that the matter had been referred to the Agent in Charge at Nashville who would take such steps as were necessary to determine the facts concerning the correct tax and that plaintiff should submit any further data concerning the matter to the agent there. By this letter the Commissioner afforded plaintiff a proper opportunity to be heard, but plaintiff did not avail himself of it. Plaintiff apparently remained in California. However, when the Commissioner had written this letter the object and purpose for which the California address had been given were fulfilled. After that the Commissioner obviously had no way of knowing, without further inquiry, whether plaintiff was in California, Arkansas, or Nashville, Tenn. In such circumstances the natural thing for the Commissioner to do, and the thing which we think the statute contemplated and required that he should do, was to mail the 60-day deficiency notice to plaintiff's last known address in the state in which he had filed his return and in which, so far as appeared, he was a legal resident. That address was the "Marion Hotel, Litle Rock, Ark."

Plaintiff argues that there is in the record no explanation as to why the notice was sent to Little Rock, Ark., instead of to

California. It is true that no one testified as to why the notice was so mailed, but there is in the evidence of record a sufficient explanation since all the evidence itself testifies to the correctness and legality of the Commissioner's action, and overcomes the charge of gross carelessness and negligence. Moreover, we think the evidence, as a whole, shows extreme negligence on the part of plaintiff in not properly handling his case during the period of nine months prior to August 13, 1931, when the tax lien was filed. If he had properly prosecuted his protest and supported it by furnishing evidence during the period from December 11, 1930, to March 11, 1931, such as he submitted for the first time October 2, 1931, the asserted deficiency would doubtless have been in the main eliminated, and there would have been no 60-day deficiency notice or assessment of the amount in question. But he did not make such evidence available to the Commissioner until after October 2, 1931. In a letter of that date from California plaintiff advised the Commissioner for the first time that the records and evidence, which he believed would show that the Consolidated Utilities' stock had no value and that he did not, therefore, owe the deficiency, were in the possession of his attorney at Jonesboro, Ark., and requested him to send one of his agents there to investigate and consider this evidence and to confer with plaintiff's attorney about the matter in order to save plaintiff the expense of compiling the evidence and submitting it to the Commissioner. At or about the same time plaintiff sent the Commissioner's audit statement and computation of the deficiency (apparently the revenue agent's report and the audit statement of December 11, 1930) to his attorney at Jonesboro, Ark., and asked his advice in the premises and received a favorable reply October 12. On October 14, 1931, plaintiff sent this letter, in which the attorney gave his opinion on the facts that plaintiff did not owe the claimed deficiency, to the Commissioner in connection with the letter of October 2, supra. The Commissioner promptly sent an agent to Jonesboro to make an investigation and report, and so advised plaintiff. The investigation was made and, as a result plaintiff was advised March 29, 1932, that the 1928 deficiency of $13,973.61, plus interest, had been reduced to $123.10 and interest of $16.29, a total of $139.39 (see finding 12).

In addition to what has hereinbefore been said, there is another matter that should be mentioned with reference to the period subsequent to March 11, 1931, in connection with the question of whether plaintiff was diligent in protecting his interests. When he received the collector's letter of June 27, 1931 (see finding 7), plaintiff knew that he had not received the 60-day deficiency notice of March 11, 1931. However, he made no protest on that account then or later when he received the Commissioner's letter of September 24, 1931 (finding 11). Plaintiff's claim for damages is based on the effect of the lien filed August 13, 1931. If he felt when he received the collector's letter of June 27, or on August 13, 1931, as he now claims, that he was being prejudiced or damaged on account of the assessment by reason of not having received the deficiency notice, or on account of the improper mailing of it, he had available, under the very section on which he bases his claim, the remedy of injunction to prevent collection or enforcement of the assessment provided for in a proper case by section 272(a) of the Revenue Act of 1928. This remedy of injunction to test the legality of the assessment had been available to plaintiff for 47 days prior to August 13, 1931, and was available to him at all times on and after August 13, 1931, but no effort to invoke it was made. Even if it were found that the assessment in May 1931 had been improper and not in strict accordance with section 272, it was not void but voidable. See Lehigh Portland Cement Co. v. United States, 30 F. Supp. 217, 90 Ct.Cl. 36, 49–51, 60–69.

Plaintiff is not entitled to recover and the petition is dismissed. It is so ordered.

WHALEY, Chief Justice; and BOOTH, Chief Justice (retired), recalled, concur.

WHITAKER, Judge (dissenting).

I do not think the Commissioner complied with the provisions of law for giving notice before the assessment of a deficiency in tax. This notice was mailed to plaintiff at the Hotel Marion, Little Rock, Arkansas, but the Commissioner had no reason to believe that this was plaintiff's last known address. Plaintiff's return was filed in Little Rock, Arkansas, but the address given on it was "H. M. Gregory, L. C. Gaty, Agt., 205–9 South Second Street, Memphis, Shelby County, Tennessee." On

this return it was stated, "Mr. H. M. Gregory is temporarily residing in California * * *."

On June 10, 1929, plaintiff wrote the Collector at Little Rock: " * * * I would also thank you to change my address from 205 South 2nd Street, Memphis, Tenn., to read 1256 Woodruff Ave., Westwood Hills, Los Angeles, Calif., as I have moved out here. Also could it be arranged for me to pay the future payments here."

In reply the Collector notified plaintiff: "As suggested in your letter, I am transferring the balance of your tax to Los Angeles and the quarterly installments for September and December should be made in that District."

On account of an attachment against plaintiff's property, levied at the instance of his wife, the Commissioner made a jeopardy assessment on December 11, 1930, against plaintiff. Plaintiff protested against this on December 29, 1930, in a letter written from 2645 Oakview Terrace, Maplewood, Missouri. Receipt of this letter was acknowledged in a letter to plaintiff addressed to him at Maplewood, Missouri.

Then on January 19, 1931, plaintiff, on the stationery of the Marion Hotel in Little Rock, Arkansas, wrote the Commissioner relative to the assessment against him and in that letter stated: "I am leaving today for Los Angeles, Calif., where I expect to remain for several months. My address there will be 2014 Glendon Ave., Westwood Hills, Los Angeles, Calif."

The Commissioner replied to this letter and addressed plaintiff at the last named address in Los Angeles.

It is evident from this that the Commissioner had no reason to believe that plaintiff's permanent address was the Hotel Marion, Little Rock, Arkansas. The address given on his return was Memphis, Tennessee, but before all the taxes due on that return had been paid plaintiff notified the Collector that he had moved to Los Angeles, and in his letter of January 19, 1931, he told the Commissioner explicitly that he would not be at the Hotel Marion after that date, but would be in Los Angeles, although at a different address in Los Angeles from that given in his letter of June 10, 1929. Plaintiff's "last known address" was 2014 Glendon Avenue, Westwood Hills, Los Angeles, California, and the Commissioner, therefore, was entirely unwarranted in mailing the deficiency notice to him at Little Rock, Arkansas.

The Commissioner was prohibited by law from making any assessments until after the giving of the sixty-day notice required by law. Since this notice was not given, the Commissioner was without authority to make the assessment in May 1931, and, therefore, was without authority to levy the distraint warrant. If, therefore, the levy of the distraint warrant caused plaintiff any loss, he is entitled to recover under the terms of the jurisdictional Act.

Plaintiff's own testimony and that of a Mrs. McKinley show that he had a firm offer for the equity in his home on Woodruff Avenue of $12,500, and that he told the person making the offer that he would accept it as soon as he could get the tax lien lifted. Before he could get it lifted, the offer was withdrawn. Thereafter the real estate market had so declined that plaintiff was unable to dispose of his home and it was sold under foreclosure and plaintiff lost his entire equity in it. I think he is entitled to recover $12,500 at least.

I think this is all he is entitled to recover because I do not think he has shown that he could or would have disposed of his other properties even though the tax lien had not been asserted against him. He showed an offer for the purchase of some of his household furnishings, but he does not say that he would have accepted this offer and would have made the sale, except for the tax lien asserted against his property, nor has he shown that the tax lien prevented him from selling his other properties.

I think plaintiff is entitled to recover the sum of $12,500.00.

MADDEN, Judge, concurs in the foregoing opinion.