GRANT et al. v. UNITED STATES.

LEWIS et al. v. UNITED STATES.

Nos. 6284, 6285.

United States Court of Appeals Fourth Circuit.

Argued Oct. 3, 1951.

Decided Nov. 5, 1951.

Murray G. James, Wilmington, N. C., and Otto T. Englehart, Washington, D. C., for appellants in No. 6284.

Isaac C. Wright, Wilmington, N. C., for appellants in No. 6285.

S. Billingsley Hill, Atty., Department of Justice, Washington, D. C. (A. Devitt Vanech, Asst. Atty. Gen., John H. Manning, U. S. Atty., Logan D. Howell, Asst. U. S. Atty., Raleigh, N. C., and Roger P. Marquis, Atty., Department of Justice, Washington, D. C., on the brief), for appellee in Nos. 6284 and 6285.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

PARKER, Chief Judge.

These are appeals from orders dismissing actions instituted under Private Law 176 of the 81st Congress, 1st Session, 63 Stat. 1143, to recover for damage to oyster beds resulting from the dumping of sewage and laundry waste into the tidal waters in which they are situate. The appellants, plaintiffs in the court below, hold leases of oyster lands from the State of North Carolina,[1] upon which they have planted oysters, which they allege have been damaged as a result of the dumping of untreated sewage and laundry waste from Camp Davis at a time when that camp was owned and operated by the United States. They have brought their action under the private law above mentioned, which is entitled "An Act For the relief of Carlton C. Grant and others" and is as follows:

"That jurisdiction is hereby conferred upon the United States District Court for the Eastern District of North Carolina to hear, determine, and render judgment upon, notwithstanding the lapse of time or any provision of law to the contrary, all claims of Carlton C. Grant (and others); or the heirs, administrators, or executors of either or any of said persons who may now be dead or hereafter die, against the United States for damages for injury to property resulting, at any time on or after May 1, 1941, from dumping of sewage and laundry waste from

1. The leases were made under General Statutes of North Carolina section 113–179 et seq.

Camp Davis, North Carolina, into Goose Creek, Barlow Creek, and King Creek.

"Sec. 2. Proceedings for the determination of such claims shall be had in the same manner as in cases of which said court has jurisdiction under the provisions of section 145 of the Judicial Code, as amended: Provided, That suits hereunder shall be instituted within four months after the enactment of this Act: Provided further, That this Act shall be construed only to waive immunity from suit of the Government of the United States and to confer jurisdiction upon said court to hear, determine, and render judgment upon the claims of the persons named in section 1 hereof, and not otherwise to affect any substantive rights of the parties."

■ The history of this legislation is fully set forth in the opinion of the court below, 92 F.Supp. 369 and need not be repeated here. We agree with the District Judge that there is nothing in its history to justify a holding that the intention of Congress in its passage was to admit liability for damages on the part of the United States and leave to the determination of the courts merely the assessment of damages. On the contrary we think it perfectly clear from the language of the act itself, as well as from the history of its passage, that the intent of Congress was to waive the government's immunity from suit, to fix a limitation period within which suit should be brought and to confer upon the court jurisdiction to determine the question of liability as well as the question of damages under the rules which would be applicable in the premises if the government were a private person or a municipality. See United States v. Mille Lac Band of Chippewa Indians, 229 U.S. 498, 33 S.Ct. 811, 57 L.Ed. 1299; United States v. Durrance, 5 Cir., 101 F.2d 109; Hempstead Warehouse Corp. v. United States, Ct.Cl., 98 F.Supp. 572; Randall v. United States, 71 Ct.Cl. 152, certiorari denied 283 U.S. 826, 51 S.Ct. 349, 75 L.Ed. 1440; Stanton v. United States, 68 Ct. Cl. 379; Creech v. United States, 60 F. Supp. 885, 102 Ct.Cl. 301, certiorari denied 325 U.S. 870, 65 S.Ct. 1409, 89 L.Ed. 1989; Gregory v. United States, 57 F.Supp. 962, 102 Ct.Cl. 642, certiorari denied 326 U.S. 747, 66 S.Ct. 26, 90 L.Ed. 447; F. Mansfield & Sons Co. v. United States, 94 Ct.Cl. 397. As said by the Supreme Court in United States v. Cumming, 130 U.S. 452, 455, 9 S.Ct. 583, 584, 32 L.Ed. 1029, "* * * if congress intended to do more than give the plaintiffs an opportunity, in an action for damages * * *, to test * * * the liability of the United States, upon the law and facts, for the alleged wrongs of their officers, that intention would have been expressed in language not to be misunderstood." That nothing more was intended here is manifest from the language of the last proviso: "That this Act shall be construed only to waive immunity from suit of the Government of the United States and to confer jurisdiction upon said court to hear, determine, and render judgment upon the claims of the persons named in section 1 hereof, *and not otherwise to affect any substantive rights of the parties*". (Italics supplied.)

■ Although we do not think that this act can be construed, in accordance with plaintiffs' contention, as establishing liability on the part of the United States for the claims of plaintiffs, leaving for judicial determination only the amount of damages, we do think that it was passed in recognition of the liability which, by the great weight of authority, existed for injuries of the character that plaintiffs have suffered and with the intent that the government be held to the same measure of liability that a private person or a municipality would be held in like circumstances, and that the District Judge was in error in not so holding. The existence of such liability is established by the great weight of authority; and there can be no question, since the decision in Hampton v. North Carolina Pulp Company, 223 N.C. 535, 27 S.E.2d 538, that it exists under the law of North Carolina. We think it equally clear that it is to the law of North Carolina that we look for determining the rights and liabilities of the parties, since the question involved is one of property rights under the laws of that state. Hampton v. North Carolina Pulp Co., 4 Cir., 139 F.2d 840; Du Pont Rayon Co. v. Richmond Industries, 4 Cir., 85 F.2d 981.

The rule that there is ordinarily no liability for dumping sewage into tidal waters is based upon the fact that there is ordinarily no private ownership of land beneath such waters and that the fouling of the waters by the reasonable disposal of sewage, so long as a nuisance is not created, is a matter arising from the natural and ordinary use of the waters by the public. Du Pont Rayon Co. v. Richmond Industries, supra, 4 Cir., 85 F.2d 981. It is held, however, that, even as to tidal streams, there is liability for pollution resulting from negligence or an unreasonable use of sewers. See note 84 Am.St.Rep. 922 and cases there cited. Where, as here, the state has expressly leased land beneath tidal waters for cultivation of oysters and the lessees have expended money and labor and have acquired valuable property rights in the oysters planted, we think there can be no question as to the liability of one who destroys the oysters by discharging untreated sewage and deleterious chemicals in such close proximity as to render them worthless. The lease by the state, which represents the public, constitutes in all reason a limitation upon the right of the public to destroy the very property for the acquisition of which the lease has been granted. The state does not, of course, lease land for oyster beds near the sewers of cities; and where it makes leases for this purpose elsewhere and the oysters are destroyed by reason of the discharge of untreated sewage or commercial chemicals into the waters surrounding them, there is no reason in law or in common sense why those responsible for their destruction should not be held to liability. One who poisons the air to the special damage of the property of another is held to liability. Sullivan v. American Mfg. Co., 4 Cir., 33 F.2d 690. We see no reason why the same rule should not apply to one who poisons the water,[2] and it is expressly so held by the North Carolina courts. Hampton v. North Carolina Pulp Co., supra.

The rule sustained by reason, and we think by the great weight of authority, is thus stated by Chief Justice Terrell, speaking for the Supreme Court of Florida, in Gibson v. City of Tampa, 135 Fla. 637, 185 So. 319, 321, which dealt with the destruction of oyster beds by a municipality's discharge of untreated sewage: "In our view, the enactment of Chapter 6532, Acts of 1913, and other acts to provide for the propagation and culture of oysters materially altered the common law right of defendant to empty its raw sewage into the ocean. Parties taking advantage of the provisions of these acts by acquiring oyster leases and investing large sums in the propagation of oysters acquire valuable rights therein which cannot be taken from them except by due process of law.

"Consequently damages that are merely damnum absque injuria and which cannot be compensated for have no reference to one who has in compliance with the law acquired extensive water bottoms and invested large sums propagating oysters or other shell fish under the law's protection. It would be as reasonable to contend that one's home or other property could be taken from him without compensation."

See also Foster v. Warblington 1 K.B. 648, 75 L.J.K.B.N.S. 514; Hobart v. Southend-on-Sea Corp. 75 L.J.K.B.N.S. 305; Owen v. Faversham 73 J.P. (Eng.) 33; Huffmire v. City of Brooklyn, 162 N.Y. 584, 57 N.E. 176, 48 L.R.A. 421; Payne & Butler v. Providence Gas Co., 31 R.I. 295, 77 A. 145, Ann.Cas.1912B, 65; Bell v. Providence Gas Co., R.I., 90 A. 2; Allgor v. Monmouth County Water Co., 128 A. 864, 3 N.J.Misc. 514; Doucet v. Texas Co., 205 La. 312, 17 So.2d 340; Haskell v. City of New Bedford, 108 Mass. 208; 22 Am.Jur. 686; 36 C.J.S., Fish, § 21 pages 852–853; note 3 A.L.R. 762–765; note 84 Am.St.Rep. 922. Darling v. City of Newport News, 123 Va. 14, 96 S. E. 307, 3 A.L.R. 748, and Hampton v. Watson, 119 Va. 95, 89 S.E. 81, L.R.A.1916F, 189, are to the contrary and so also are implications to be drawn from the decision of this court in Du Pont Rayon Co. v. Richmond Industries, supra; but it must be remembered that all of these cases were dealing with the law of Virginia, which is

2. Sections 113–172 of the General Statutes of North Carolina makes it a criminal offense to discharge into "the waters of the state any deleterious or poisonous substance or substances inimical to the fishes inhabiting the said water."

486

at variance with the general rule and the law of North Carolina here controlling.

While the destruction of oyster beds by the discharge of untreated sewage and chemicals into tidal waters has not been before the Supreme Court of North Carolina, there can be no question as to what the North Carolina rule on the subject is in view of the decision in Hampton v. North Carolina Pulp Co., supra, 223 N.C. 535, 27 S.E.2d 538, 542. Plaintiff in that case was the owner of a commercial fishery on the waters of the Roanoke River near Plymouth, N. C., which the court will judicially notice are tidal waters. Defendant pulp company was discharging poisonous waste and substances into the waters of the river in such way as to interfere with the passage of the fish upon which the success of plaintiff's fishery depended. The question at issue was thus stated by the North Carolina court: "The main question is whether, considering the nature of his business and the circumstances attending it, the plaintiff may maintain an action to recover damages for the interference with his fishing business by the pollution of the waters of the river with toxic chemicals and other deleterious matter discharged into the river as waste matter from defendant's pulp mill, which arrest the migration of the fish or divert to other waters their normal run past plaintiff's riparian property." In answering this question in the affirmative the court held the discharge of the poisonous substances from the pulp plant into the river to constitute a public nuisance on account of which plaintiff was entitled to recover because it had sustained special damage. The poisoning of fish by the discharge from the pulp plant cannot be distinguished on any rational principle from the poisoning of oysters by the discharge from the laundry; and certainly if there was a sufficient property right for the law to protect by the award of special damage with respect to the free running fish, there was such a right with respect to the oysters which plaintiffs had planted on oyster lands which they had leased from the state.

For the reasons stated the decisions appealed from will be reversed and the cases will be remanded for further proceedings not inconsistent herewith.

Reversed.